IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1871, IN THE FIFTY-SIXTH
YEAR OF THE STATE.

———————◆———————

### POTTER and Others *v.* SMITH and Others.

ADMINISTRATOR'S SALE.—*Purchase by Administrator.*—*Statute of Limitations.*
Where an action is brought by heirs to set aside a public sale of real property,
made by an administrator under the order of the court, on the ground that he
was the real purchaser of the property in the name of another party, the law
does not grant the relief because the act is necessarily fraudulent, but because
it is poisonous in its consequences; and therefore the statute limiting actions
"for relief against frauds" does not apply.

SAME.—Such a suit is not an action for the recovery of real property; and there-
fore the limitation to twenty years does not apply.

SAME.—*Limitation of Fifteen Years.*—Such a suit, being embraced by no other
statute, comes within section 212, 2 G. & H. 160, and must be brought within
fifteen years.

PLEADING.— *Statute of Limitations.*—Where a statute of limitations contains
exceptions, it must be pleaded, to avail the defendant, unless the complaint on
its face shows that the plaintiff is barred, notwithstanding the exceptions.

ESTOPPEL.—*Heirs.*—*Administrator.*—Knowledge by the heirs of the purchase
by the administrator, and their allowing him without objection to make valu-
able improvements, does not estop them. At most, he must be satisfied if he
be repaid on the resale of the property.

APPEAL from the Knox Circuit Court.

WORDEN, C. J.—This was an action by the appellees, who
were the heirs at law of Samuel Caruthers, deceased, against

the appellants, who were heirs at law and devisees of George W. Potter, deceased, and one Abraham Smith.

The complaint alleges, in substance, that on the — day of ————, the said Samuel Caruthers died, leaving certain real estate therein described, situate in said county of Knox, and that said George W. Potter was duly appointed administrator of the estate of said Caruthers by the probate court of said county; that afterward, to wit, at the September term of said probate court for the year 1847, the said administrator, upon his petition, procured an order from said court for the sale of a portion of said real estate, which is described; that afterward, to wit, on the 2d day of October, 1847, said administrator made a pretended sale of said real estate ordered to be sold, to said Abraham Smith, for the nominal sum of two hundred dollars, and took his notes for one hundred dollars each therefor, payable in twelve and eighteen months; that afterward, to wit, at the November term of said court for the year 1847, the said administrator reported said sale to said court and procured a confirmation thereof; that afterward, at the March term, 1849, of said court, the said administrator reported to said court that said Smith had paid him in full for said land, whereupon the court ordered said administrator to execute a conveyance of the land to Smith; and that afterward, to wit, on the 15th day of June, 1849, the said administrator signed and acknowledged said conveyance and procured the same to be recorded in the recorder's office of said county; that at the September term, 1849, of said probate court, the said administrator, upon his petition therefor, procured an order from said court for the sale of other described portions of said lands of which said Samuel Caruthers died seized, and that afterward, to wit, on the 13th of October, 1849, the said administrator made a pretended sale thereof to said Abraham Smith for the nominal sum of two hundred and sixty dollars, and took his notes therefor, payable in six and twelve months; that afterward, to wit, at the December term, 1849, of said court said administrator reported said sale to said court, and procured a

confirmation thereof by the court; that afterward, to wit, at the June term, 1852, of said court, the said administrator reported to the court that he had received payment in full for said land, and the court ordered said administrator to execute a conveyance therefor to said Smith, and that afterward, to wit, on the 17th day of June, 1852, the administrator signed and acknowledged such conveyance and caused the same to be recorded in the recorder's office; that said pretended sales by said administrator were made for the purpose of enabling him to procure the title to the lands of which said Samuel Caruthers died seized; that said lands were struck off and sold to said Smith under an agreement between him and said Potter that said Potter should pay the purchase-money therefor, and that said Smith should convey said real estate to said Potter whenever thereafter requested; that said Smith never paid any part of said purchase-money, nor did he take possession of the land or claim any of the rents and profits thereof, or interest therein, under said sale; that the conveyances from said administrator to said Smith were never in fact delivered to said Smith, or in his possession, during the lifetime of said Potter, but were by said Potter caused to be recorded in the deed record of said county and retained in his own custody; that from the time said conveyances were made until the death of said George W. Potter, he kept the possession of the real estate of which said Caruthers died seized, and converted the rents and profits to his own use, and that during his life he declined to have said Smith convey to him said real estate, so as aforesaid sold by said Potter, but suffered the apparent legal title to remain in Smith for the purpose of deceiving the plaintiffs and defrauding them out of their interest and estate in the lands of which said Samuel Caruthers died seized; that said George W. Potter died in April, 1865, leaving a wife and children named as defendants; that afterward, to wit, on the 6th of February, 1866, the said Abraham Smith, without any consideration, and against the protests of the plaintiffs, executed to the widow and children of said Potter, deceased,

a conveyance purporting to convey to them all the lands struck off to him by said administrator as aforesaid; that the defendants, since the death of George W. Potter, deceased, have been in possession of the premises, and claim and pretend to own the same under the conveyances aforesaid. Prayer for general and special relief.

A demurrer was filed to the complaint, assigning for cause the want of sufficient facts, etc., but was overruled, and the defendants excepted.

The adult defendants answered in five paragraphs, as follows: first, general denial; second, "that the plaintiffs' cause of action accrued more than twenty years before the commencement of this suit, and that during all that time they had full notice thereof, and the land was sold by said administrator at public sale;" third, "that the plaintiffs' cause of action accrued more than fifteen years before the commencement of this suit, and that during all that time they had full notice thereof, and that the land was sold by said administrator at public sale;" fourth, "that said sales were made by said administrator at public auction, in all respects in accordance with the orders of said probate court, and the law in such cases made and provided, and without any effort or intent, on the part of said administrator, or said Abraham Smith, to take any advantage of said estate or the persons interested therein, but that all proper efforts were made to procure the highest bid for said land; and that, nevertheless, the said administrator was willing to pay more therefor than any other person, and for the sole purpose of securing the best price to the estate, and because the land was worth more to him than any other person, he had the same bid off for him and accounted to the court for the purchase-money; that all the heirs of said Caruthers, deceased, who were living at the time of the sale aforesaid, then, and before the sales, well knew these facts, but for the purpose of realizing the best price for the land, allowed the sales to be made as aforesaid, without making any objection thereto. That each sale was made at the time alleged in the complaint, and said

Potter and Others *v.* Smith and Others.

administrator immediately took possession of the premises, believing his title to be good and valid thereto, and made lasting and valuable improvements thereon by clearing the land and erecting valuable buildings, all of the value of five thousand dollars; that the plaintiffs, and those under whom they claim well knew all these facts, yet they did not, nor did any of them, make any objection or set up any claim to said real estate until the commencement of this suit."

The fifth paragraph of the answer, by way of counter claim, set up a claim to be reimbursed for the purchase-money and improvements and the taxes paid on the property. An issue of fact was taken on this paragraph.

Demurrers were sustained severally to the second, third, and fourth paragraphs of the answer, and the defendants excepted.

The infant defendants, by their guardian *ad litem*, filed an answer of general denial, and adopted as their own the answer of the adults.

The cause was submitted to the court for trial, who found for the plaintiffs, and ordered the lands to be sold, and the proceeds applied, first, to the payment of the costs therein; second, to reimburse the defendants for the purchase-money and interest and taxes paid on the premises, and the improvements made thereon, less the rents and profits thereof; and third, the residue, if any, to be paid to the plaintiffs, according to their respective interests.

No question is made in this court other than those arising upon the ruling of the court below upon the several demurrers.

The only objection urged to the complaint, except one that will be noticed hereafter, is the great lapse of time, after the transaction, before the bringing of this suit.

The appellants ask, " Do these facts, as stated in the complaint, show that the plaintiffs below proceeded within a reasonable time to set aside this sale?" The objection thus made is not, in our opinion, well taken.

Where lapse of time is relied upon as a defense to an

action, it must generally, under the code of procedure, be pleaded to the action, and be based upon some statute limiting the same. This may not have been the old rule in relation to many suits in equity, but by the code the distinction between actions at law and suits in equity is abolished; and it is provided that "there shall be in this State, hereafter, but one form of action for the enforcement or protection of private rights, or the redress of private wrongs, which shall be denominated a civil action." By the provisions of the code, the plaintiff is entitled, on bringing his action, to whatever relief either law or equity would have afforded him on the case made, before the distinction between them, in practice, was abolished. The two systems are blended together, and either legal or equitable rights are to be enforced in the "civil action" provided for. So, on the other hand, may the defendant set up to the action any matter of defense, either legal or equitable.

And as a part of the same system, the legislature provided for the "limitation of civil actions," and enacted that certain actions should be brought within certain specified times, and that "all actions not limited by any other statute shall be brought within fifteen years," but that in special cases where a different limitation is prescribed by statute, the provisions of that article should not apply. 2 G. & H. 156.

Under these provisions, it is quite clear that the legislature intended to fix certain and definite times within which all actions should be brought, whether they would, before the code, have been actions at law or suits in equity, and to leave nothing, in this respect, to doubt and uncertainty; the time limited depending upon the nature and purposes of each particular action. This view is sustained by the case of *Pilcher* v *Flinn*, 30 Ind. 202. The distinction between bringing, and laying the foundation for an action must not be disregarded. There are cases where a man must act promptly and within a reasonable time, in order to be entitled to an action; e. g., if he finds himself defrauded in a contract, he may be required, in order to rescind, to act promptly on the discov-

ery of the fraud, and tender back to the other party what he has received, thereby placing him *in statu quo*, and demand a rescission; but having done all that is necessary to entitle him to a rescission, he may bring his action therefor at any time before he is barred by the statute. There is no preliminary step, that we are aware of, required to be taken by a *cestui que trust* before bringing an action, in order to entitle him to the relief sought in this case.

As a limitation is prescribed to the bringing of such actions, the question arises whether, where it appears by the complaint that the prescribed time has elapsed before the bringing of the action, the objection can be taken by demurrer. The statute contains various exceptions, as the disability of the plaintiff, non-residence of the defendant, etc.; and where such is the case, it is the settled rule that the statute, if relied upon, must be pleaded, unless, indeed, the complaint shows affirmatively that the plaintiff is barred, notwithstanding the exceptions. The reason is, that the case may be within some of the exceptions, and the plaintiff is not bound to anticipate the defense of the statute and show his case to be within the exception without knowing that such defense will be made. Upon the statute being pleaded, he may reply the exception. *Hanna* v. *The Jeffersonville Railroad Co.* 32 Ind. 113; *Perkins* v. *Rogers*, 35 Ind. 124.

The other objection to the complaint is, that it makes no case against the defendants, inasmuch as it appears that the sale of the property was made at public auction. In other words, it is claimed that an administrator may purchase at his own sale, and for his own benefit, where the sale is public, and not private.

This position is based upon the peculiar phraseology of section 233, p. 529 R. S. 1843, which provides, that in cases of private sale by an executor or administrator, the land shall not be sold for less than its appraised value, " nor shall such executor or administrator be permitted to become the purchaser." The same provision is incorporated into the revision of 1852. 2 G. & H. 511, sec. 88.

It is claimed that this provision, by expressly prohibiting the executor or administrator from purchasing at a private sale, by implication permits him to become the purchaser where the sale is public. The argument is plausible, but we cannot concur in the conclusion. We think that while the statute excludes the executor or administrator from purchasing where the sale is private, the law stands, as to public sales, as if there had been no legislation on the subject.

Mr. Justice STORY says, that "in all cases where a purchase has been made by a trustee on his own account, of the estáte of his *cestui que trust,* although sold at public auction, it is in the option of the *cestui que trust* to set the sale aside, whether *bona fide* made or not." I Story Eq., sec. 322.

We think the demurrer to the complaint was properly overruled.

We come to the answer. This is clearly not an action to recover the possession of real estate, nor does it belong to the class of actions limited by the fifth clause of section 211 of the limiting statute to twenty years. Hence the second paragraph of the answer relies upon a clause of the statute inapplicable to the case, and the demurrer thereto, we think, was correctly sustained.

The third paragraph of the answer, we think, was good, and, therefore, the demurrer thereto should have been overruled. This conclusion is arrived at from the fact that there is no other provision than the one relied upon in this paragraph that is applicable to the case made in the complaint; and hence that the case is embraced in 2 G. & H. 160, section 212, which limits all actions, not limited by any other statute, to fifteen years.

We have considered whether the action was not limited by the section which fixes a six years' period, and embraces actions "for relief against frauds," but have concluded that the case does not fall within that section. That section embraces actual frauds, and possibly some cases of·constructive frauds, but does not, as we think, embrace a case like the present, where the heir has a right to have the sale set aside

and the property again sold, not because the executor or administrator has been guilty of any fraud, but because he should be removed from all temptation to commit a fraud.

"The principle applies," says Judge STORY, in the section above cited, "however innocent the purchase may be in a given case; it is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to decide, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, and yet the party not be able to show it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come at his own option, and, without showing essential injury, to insist upon having the experiment of another sale."

We quote, also, the following paragraph from 1 White & T. Lead. Cas. 161, as showing that the right of the *cestui que trust* does not depend upon any fraud imputed to the trustee:

"It matters not that there was no fraud contemplated and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it. It is one of those processes derived from the system of trusts by which a court of chancery turns parties away from wrong, and from the power of doing wrong, by making their act instantly inure in equity to rightful purposes. The cases are uniform in declaring that it matters not how innocent and *bona fide* and free from suggestion of fault the transaction may be, nor how harmless or even beneficial the interference of the trustee may have been, the trustee can never, by his own act, shake off the equity of the *cestui que trust* to have the benefit of all that he does in the scope of the trust; and the *cestui que trust* may come into equity as of course, and, without the imputation of either fraud or injury, ask for a re-sale of the property; and whether the property was or

was not worth more than the amount of the trustee's bid, is never inquired into."

The paragraph of the answer under consideration avers, as we think unnecessarily, that the plaintiffs had notice of the cause of action during all the fifteen years. The statute commences running when the cause of action accrues, and not when the plaintiff discovers it, except where the party liable to an action conceals the fact from the knowledge of the person entitled thereto; in which event, it runs only from the time of the discovery. *Pilcher* v. *Flinn, supra;* 2 G. & H. 162, sec. 219.

The fourth paragraph of the answer, we think, was bad, and the demurrer to it correctly sustained. From what has already been said, it is clear that this paragraph is bad, unless the facts set up estop the plaintiffs to seek the remedy to which they would otherwise be entitled. We do not think the matters set up in this paragraph, as against a *cestui que trust,* work such estoppel. If the *cestui que trust* permitted the trustee to buy the land without objection, and afterward to make valuable and lasting improvements thereon, as is alleged, it may be good ground in equity for reimbursing him therefor out of the first moneys arising from a re-sale of the property, as was ordered by the court; but when this is done he cannot equitably claim anything more. See *Bœrum* v. *Schenck,* 41 N. Y. 182.

We have thus passed upon the questions involved in the several demurrers, and find no error except in the ruling upon the demurrer to the third paragraph of the answer. For that error the judgment below will have to be reversed.

The judgment below is reversed, with costs.

*J. C. Denny, G. G. Riley,* and *F. W. Viehe,* for appellants.
*N. F. Malott* and *T. R. Cobb,* for appellees.