Taylor *v.* Calvert *et al.*

---

### No. 16,733.

### TAYLOR *v.* CALVERT ET AL.

| 138 | 67 |
| 147 | 582 |
| 138 | 67 |
| 150 | -93 |

GUARDIAN AND WARD.—*Guardian Buying Certificate of Purchase.— When Held in Trust.*—Where it is the duty of a guardian to protect his wards' interest by buying a certificate of purchase, and he makes the investment for himself, he will be held as their trustee, and all benefits derived from such purchase will inure to the benefit of the wards.

SAME.—*Guardian Assuming Position Antagonistic to Wards' Interest.— When Held a Trustee.—Reimbursement.*—Wherever a guardian assumes a position in relation to his wards' funds, by which he puts his personal interest in conflict with theirs, or acquires any interest or title adverse to that of his wards, he will not, whether he intended any fraud or not, be permitted to retain the advantage, but the same will inure to the benefit of his wards, and he will hold what he has acquired, in trust for them, subject only to his right to be reimbursed for what he has invested.

SAME.—*Mortgage Deed Held by Guardian.—Junior Lien Held by Wards. —Right to Redeem.*—Where a guardian purchases a certificate of sale of lands on a senior lien, on which his wards hold a junior lien, and takes a deed therefor in his own name, in the nature of a mortgage, for the purpose of holding it as additional security for the money advanced by him in the purchase thereof, until such time as he might repay himself out of the funds of his wards, but in his final report and settlement he made mention of the certificate and deed, but took credit for the junior mortgage, which he turned over to his wards, the wards have a right to have the deed to the guardian set aside and to redeem from said sale. The fact that the guardian at

no time had sufficient funds of his wards with which to reimburse himself for the purchase-money, could not preclude the wards from redeeming, nor could it defeat a constructive trust.

SAME.—*Right of Wards to Redeem.—Tender of Redemption Money.—Rents and Profits.*—And in such case it is unnecessary to allege that . the redemption money was tendered to the guardian, where it is alleged that he has been more than paid by the rents and profits by him received.

SAME.—*Final Settlement.—When does not Preclude Right of Wards to Redeem.—Res Adjudicata.*—In such case, the wards were not precluded from their right to redeem, by the judgment of final settlement, such matter not being involved in the final settlement, and it not being necessary to set aside such report before proceeding to redeem.

SAME.—*Arrangements Between Guardian and Ward Soon after Ward Becomes of Age.*—The conduct and all arrangements between guardian and ward soon after the ward has become of age will be closely scrutinized.

STATUTE OF LIMITATIONS.—*Guardian and Ward.—Constructive Trust.—Action to Enforce.*—An action to enforce a constructive trust growing out of a fiduciary relation (guardian and ward), the act (the claim of adverse title) complained of being poisonous in its consequences, the suit can only be barred by the fifteen years' statute of limitations, which would begin to run when the guardian was discharged from his trust and began to claim title absolute in himself adversely to the trust.

VARIANCE.—*Complaint and Proof.—When Immaterial.*—A variance between the complaint and the evidence is immaterial where the complaint might have been amended so as to cure it, after the evidence was all in; and such amendment will be presumed.

EVIDENCE.—*Value of Rents and Improvements.—How Proven.*—Where the facts sought to be elicited is the rental value of lands and the value of improvements, the proper test is, on the one hand, what was the rent of the place really worth? and, on the other, what is the reasonable value of the improvements made? Not what rent was actually received, and what the improvements cost.

SAME.—*Offer to Prove.—Specific Statement.*—An offer to prove will not be available unless the facts sought to be elicited are specifically stated.

NEW TRIAL.—*As of Right.—When not Demandable.*—A new trial as of right is not obtainable where the cause proceeded to judgment on the entire complaint against the defendant, as to one of the paragraphs of which a new trial as of right was not demandable; notwithstanding such an issue was raised by the cross-complaint, to which the judgment makes no reference.

Taylor *v.* Calvert *et al.*

From the Greene Circuit Court.

*A. G. Cavins, E. H. C. Cavins* and *W. L. Cavins,* for appellant.

*W. W. Moffett* and *C. E. Davis,* for appellees.

DAILEY, J.—This is an action brought in the court below by the appellees against the appellant and James R. Hodges and Louisa M. Hodges, his wife, in two paragraphs, based upon the following state of facts: On March 23, 1874, the appellant Robert R. Taylor was appointed guardian of John I. and Mathew H. Calvert, as successor to James R. Hodges, whose bondsmen were insolvent. Hodges had converted the larger portion of his wards' funds, but executed to Taylor a note and mortgage on his only remaining farm or property as security for $711 of the money, and included in the mortgage a $200 note due to Taylor. This farm was, at the time, worth $2,000. When the mortgage was given there was in the hands of the sheriff of Greene county an execution against James R. Hodges, which was soon after levied upon the land. Sale was duly made on this execution to one Isom Sanders, who, a short time before the year for redemption expired, sold the certificate of purchase to the appellant, Taylor. Up to that time Taylor had taken no steps to procure funds with which to redeem from said sale, or in any way to protect the mortgage of his said wards, but he afterwards reported to the court that he had bought the certificate of purchase, thinking he might save something for his wards out of the land. It does not appear that he ever afterwards took any steps to in any way use said certificate to save anything for his wards; but, on the contrary, after his wards became of age, asserted title in his own name to the land. When Taylor settled with his wards, he turned over to them the notes and mortgage and took credit for

the same. When settling with Mathew, the last one of the wards, Taylor told him he could do nothing with the mortgage until Hodges died leaving his wife surviving, when he could foreclose the mortgage against her third of the land. Taylor has ever since held possession of the tract, enjoying the rents and profits.

Before the beginning of this suit John I. Calvert died, leaving his widow, now Mrs. Johnson, and the other defendants herein, except Mathew, his only heirs. There was no administration on his estate and he left no debts unpaid.

It is alleged in the first paragraph, that Taylor took the certificate of purchase in trust for his said wards, and avowedly for their benefit; that John I. Calvert arrived at the age of twenty-one on January 1, 1879, and Mathew H. Calvert became of age in December, 1881; that thereafter said Taylor repudiated the trust, and continues to hold said real estate and to receive the rents and profits thereof of the value of $3,500, and now holds possession of the real estate and denies appellees' right thereto. Appellees demand that after deducting amounts paid by appellant for rents they have judgment for the residue of rents and profits, a decree vesting title in them, a foreclosure against said James R. and Louisa M. Hodges, and all other proper relief.

The second paragraph of the complaint directly alleges that Taylor took the certificate of purchase to protect his wards' mortgage and equity of redemption in the land, but failed to redeem the same by paying himself out of his wards' money, but when the year expired took a deed in his own name, for the purpose, however, of holding the same, and promising to hold said deed as an additional security to him for money by him advanced in the purchase of the certificate until such time as he might be paid out of their funds, but though he had sufficient

money of theirs thereafter did not redeem for them, but continued to hold said deed and certificate as security until his wards became of age, when he turned over to them the mortgage and notes, and settled with them without mentioning to the court the existence of said certificate; that said mortgage and notes are the property of the plaintiffs, and are yet unpaid; that defendant Taylor has had possession, appropriating the rents and profits to his own use, and has been fully reimbursed for all the money by him invested in said certificate of purchase; that said appellant made no mention of said certificate of purchase or deed or said real estate in either of the final reports as to said wards, but took their respective receipts for and made assignment to them respectively of their interests in said mortgage and note, and took credit therefor in his final reports; that said Taylor was finally discharged as guardian on January 10, 1883.

Prayer that the deed be set aside as to the appellant, and that the appellees be allowed to redeem and foreclose against said Hodges and Hodges, and for all other proper relief.

The defendants, James R. Hodges and Louisa M. Hodges, filed their answer to the complaint, disclaiming any interest in the real estate described in the complaint, or in the controversy involved in the issues tendered. Subsequently the appellant filed a demurrer to the complaint and each paragraph thereof, which was overruled and appellant excepted. Appellant then filed an answer in four paragraphs as follows:

1st. A general denial.

2d. A full statement of the facts in relation to all matters set out in the complaint, his final settlement as guardian and his discharge.

3d. The statute of limitations of six years.

4th. The statute of limitations of fifteen years.

In the 2d, 3d and 4th paragraphs, appellant answers the complaint except as to the inchoate interest in the land of Louisa M. Hodges. Appellant also filed a cross-complaint in two paragraphs. the first of which was afterwards withdrawn. The second paragraph of cross-complaint was to quiet title to the real estate in controversy in appellant. Appellees demurred to the 2d, 3d and 4th paragraphs of answer, and each paragraph of cross-complaint. James R. Hodges and Louisa M. Hodges filed a disclaimer to the cross-complaint of the appellant. The court sustained the demurrer to the third paragraph of appellant's answer, and appellant excepted, and the court overruled the demurrer to the 2d and 4th paragraphs of answer, and the second paragraph of cross-complaint to which the appellees excepted. The issues were closed, there was a trial by the court, and finding and judgment in favor of appellees against the appellant, decreeing that appellees were the owners of the real estate in controversy. There was a motion for a new trial by appellant, which was overruled and exception taken, and sixty days were given in which to file bills of exceptions. There was a motion for a new trial as of right under the statute, which was also overruled by the court, and exception taken by the appellant. Appeal to this court was prayed and granted, and the following errors assigned:

1st. The complaint does not state facts sufficient to constitute a cause of action.

2d. The court erred in overruling the demurrer to the first paragraph of the complaint.

3d. The court erred in overruling the demurrer to the second paragraph of the complaint.

4th. The court erred in sustaining the demurrer to the third paragraph of the answer.

5th. The court erred in overruling the motion to strike out the second paragraph of the reply.

6th. The court erred in overruling the motion for a new trial.

7th. The court erred in overruling the motion for a new trial as of right under the statute.

The first three specifications of error raise one question, the sufficiency of the complaint and each paragraph thereof. The first paragraph of the complaint is not, as the learned counsel for the appellant contend, drawn upon the theory of a resulting or implied trust arising from the fact that the money of one is used, and the title taken, in the name of another. The theory of this paragraph is that of a constructive trust growing out of a constructive fraud, or the violation of duty in a fiduciary relation. As we understand it, the appellees in this paragraph of the complaint present the theory that when Taylor, as their guardian, held the Hodges mortgage, he could not assume in relation to the land mortgaged any position in conflict or inconsistent with their interest, without first resigning his trust. He could not represent them in holding the mortgage, and represent himself in holding an adverse lien, the certificate of purchase. As he did assume to purchase the certificate which was adverse and superior to the mortgage due the wards, the purchase would inure to their benefit, and he would be adjudged to hold the certificate as their trustee; and that too, whether he bought it with his own money or theirs; the only difference being that in the absence of actual fraud he would, if he invested his own money, be entitled to be reimbursed. The theory of this paragraph assumes that it can make no difference whether there was any fraud intended or not, nor whether Taylor designed from the beginning to hold the certificate for himself or avowedly for the protection of his wards. In

other words, whether he intended to take the certificate in trust, or to take it for himself, the law will construe it to be held in trust for, and it will inure to the benefit of, his wards in whose interest his fiduciary relation compelled him to act, if he acted at all in the matter. The theory of the complaint assumes, further, that for all money invested by Taylor he has been fully compensated by rents and profits. It is true, as a general proposition, that a trust can only result where the beneficiary's money has been invested; but the doctrine applies to person's "dealing at arm's length," and by no means conflicts with the principle of constructive trusts growing out of constructive frauds in fiduciary relations, which is an entirely different branch of the law. In 1 Story's Equity, section 258, it is said: "By constructive frauds are meant such acts or contracts as, although not originating in any actual evil design or contrivance to perpetrate a positive fraud or injury upon other persons, are yet by their tendency to mislead or deceive other persons, or to violate private or public confidence, or to injure * * public interests, deemed equally reprehensible with positive fraud, and therefore are prohibited by law as within the same * mischief as acts and contracts done *malo animo.*" In section 259, the author says: "Some of the cases under this head are principally so treated because they are contrary to some general public policy or to some fixed artificial policy of the law. Others again rather grow out of some special confidential or fiduciary relation between all the parties, * which is watched with special jealousy and solicitude because it affords the power and the means of taking undue advantage or of exercising undue influence over others." In section 307, it is said: "Courts of equity will therefore * * often interfere in such cases, where but for such a peculiar relation they would either

abstain wholly from granting relief or would grant it in a very * abstemious manner."

It is also said: Generally stated, the doctrine governing all fiduciary relations, such as attorney and client, parent and child, principal and agent, trustee and *cestui que trust*, guardian and ward, and like relations, is that whenever confidence is reposed, and one party has it in his power, in a secret manner, for his own advantage, to sacrifice those interests which he is bound to protect, he will not be permitted to hold any such advantage. 1 Story's Equity, section 323; *Roby* v. *Colehour*, 25 N. E. Rep. 777.

"So if an agent employed to purchase for another purchases for himself, he will be considered as the trustee of his employer." 1 Story's Equity, section 316.

Similarly, it might be stated that where it is the duty of a guardian, as it was Taylor's in this case, to protect his wards' interest by buying the certificate of purchase, and he made the investment for himself, he should be held as their trustee. So, where, if a person is employed as an agent to purchase a debt of his employer, he can not buy it upon his own account. The same rule applies to a surety who purchases the debt of his principal. So, if an agent discover a defect in the title of his principal to land, he can not misuse it to acquire title in himself. If he do, he will be held a trustee for his principal. Section 316, *supra*.

So, a trustee will not be permitted to obtain any profit or advantage to himself in managing the affairs of the *cestui que trust*, but whatever benefits or profits are obtained will belong to the latter. In short, it may be laid down as a general rule that a trustee is bound not to do anything that will place him in a position inconsistent with the interest of the trust, or which may have a tendency to interfere with his duty in discharging it. And

this doctrine applies not only to trustees strictly so called, but to other persons standing in like situations. Executors and administrators, for instance, are not permitted to purchase up the debts of the decedent on their own account, but whatever advantage is thus derived by them, by purchases at an under value, is for the common benefit of the estate. 1 Story's Equity, section 321; *Cushman* v. *Bonfield*, 28 N. E. Rep. 937.

It is an inflexible rule that where the trustee buys at his own sale, the *cestui que trust* may treat the sale as a nullity, though the trustee paid a fair price, not because there is, but because there is likely to be, fraud. Bigelow on Frauds, p. 244.

On page 242, the author says it is a general rule which obtains in respect to trustees of every description and of tenants for life, that if from being in possession they have and improve an opportunity of renewing a lease, whatever advantage they obtain by such means, they must hold in trust. Equity treats all such transactions as poisonous and vicious, without reference to the motive that induced the act. Where one is interested as a partner of the owner of land in the profits of its sale, and who is also the attorney and legal adviser of such owner, buys in the title at execution sale, he holds the title so acquired in trust for himself and his partner. *Roby* v. *Colehour, supra.*

The same principles are recognized by this court, and enforced without modification. *Potter* v. *Smith*, 36 Ind. 231; *Wilson* v. *Brookshire*, 126 Ind. 497.

In the latter case, on page 501, the court express the principle underlying the case at bar, in these words: "By accepting the trust and entering upon its performance, Wilson assumed such a relation to the property in controversy that he became disqualified from acquiring any right in it hostile to those in whose behalf he was

acting, without their consent.    And this was so whether he contemplated any fraud upon them or not.    *    *    He could not, while standing in the relation of trustee, acquire title to the trust property.''

In *Potter* v. *Smith*, *supra*, it is said:    ''The cases are uniform in declaring that it matters not how innocent and *bona fide* and free from suggestion of fault the transaction may be, nor how harmless or even beneficial the interference of the trustee may have.been, the trustee can never, by his own act, shake off the equity of the *cestui que trust* to have the benefit of all that he does in the scope of the trust.''

On page 240, it is said, in substance, that when the trustee is reimbursed as vendee, he can not equitably claim any more.

In Story's Equity, section 317, in speaking of the relation of guardian and ward, it is said:    ''In this most important and delicate of trusts the same principles prevail, and with a larger and more comprehensive efficiency.''    We cite 8 Am. and Eng. Encyc. of Law, p. 647, also note p. 648; Bigelow Fraud, p. 250; 9 Am. and Eng. Encyc. of Law, p. 105, note 4; 2 Pom. Eq. Jur., section 956.

From these authorities we may safely deduce the principle of law that whenever a guardian assumes a position in relation to his wards' funds, by which he puts his personal interest in conflict with theirs, or acquires any interest or title adverse to that of his wards, he will not, whether he intended any fraud or not, be permitted to retain the advantage, but the same will inure to the benefit of his wards, and he will hold what he has acquired, in trust for them, subject only to his right to be reimbursed for what he has invested.    Under this purchase, Taylor held the land in suit in trust for his wards, subject to his vendee's lien thereon.    It is true, they had no title

to the land when Taylor bought the certificate, but they had a lien on it. It was the guardian's duty to make good this lien if he could, and, if need be, to take steps to ripen it into a title by foreclosure, and when he bought an adverse and senior lien, he put himself in a place where it was to his interest to prevent a redemption from the certificate, or a foreclosure of the wards' mortgage.

By making proper application to the court he could have been empowered to borrow money for the wards, if he did not have sufficient of their funds with which to buy in the certificate of purchase for them, and thus prevent the loss of the junior lien. *Ray* v. *McGinnis, Guar.,* 81 Ind. 451.

But the purchase by Taylor of the certificate for himself put him in a position where he could not take this step without depriving himself of the investment he had made in the purchase of the certificate, which gave him an opportunity to acquire a $2,000 farm for $700. In this we assume that the allegations of the complaint are to be taken as showing no intention or promise by the guardian to hold the certificate for his wards, which is the construction contended for by appellant's counsel. But we think the first paragraph of the complaint shows it was the intention of Taylor to purchase the certificate for the benefit of his wards from the very beginning, and, if so, the equitable title would be as much theirs as if they had bought it for themselves. If he invested any of his own money in the transaction, he would be entitled to have it refunded.

'The first paragraph of the complaint alleges that he has been paid in rents and profits a sum more than adequate to pay him. We think this paragraph is sufficient to establish and enforce a trust against Taylor, because of the fiduciary relation which he sustained and his con-

duct in that relation.   Appellant contends there is no allegation showing that appellees have not received all the money ever due them, nor that they have not received the money on the note.   In this they are mistaken.   The complaint shows that the note was delivered to the wards and is now owned by them.   But it could make no difference whether the wards had received the money on the note or not; for, if the certificate of purchase was theirs in the beginning, it would remain theirs, and the benefits derived would continue, notwithstanding they might, from other sources, have received the money on their mortgage.

The theory of the second paragraph of the complaint is not to enforce a trust in the land.   It proceeds on the theory that Taylor holds, unless it be paid, a senior lien upon the land, and that the plaintiffs hold a junior mortgage lien.   They ask an order permitting them to redeem, if anything is found remaining unpaid on the certificate of purchase or deed, and pray for a foreclosure against Hodges and wife.   It presents the theory that Taylor's certificate and deed did not become in fact, and never has been, anything more than a lien, which he held as security, and not as evidence of title, until after he settled with these wards.   Its allegations recite the facts as in the first paragraph, showing the existence of the two liens down to the point where it sets out the purchase of the certificate by Taylor.   Then the paragraph reads as follows:   "And on the 2d day of April, 1875, before the year for redemption from said sale had expired, and while said Taylor had more than $600 of the funds of said wards in *his* hands, he purchased of said Sanders the certificate of purchase which had been issued to him by the sheriff to evidence said sale; that he purchased and took the same to protect the mortgage and security of his wards in said lands, and so held the same,

but failed to redeem by paying to himself the money of said wards to that amount, or by paying it to any one having the right to receive it; that when said year for redemption had expired said Taylor took in his own name the sheriff's deed for said lands for the purpose of holding it as additional security for the money advanced by him in the purchase thereof, and promised and agreed so to do until such time as he might repay himself out of the funds of said wards.''

These allegations show that Taylor never took the deed to acquire the title, but simply as a lien in the nature of a mortgage, and, if so, any junior lien-holder, with whom Taylor had so agreed, would have the right to redeem, whether he was Taylor's ward or not.

The second paragraph of the complaint further states that Taylor, in his final settlement with the court, made no mention of this certificate or of the $200 included in the mortgage and made payable to himself, but took credit for the junior mortgage, which he turned over to his wards, and that plaintiffs are now owners of said note and mortgage; that the note is lost but due and unpaid, a copy of the mortgage is filed as an exhibit; that Taylor has had possession, receiving the rents and profits to the amount of $3,500, and is more than reimbursed for all the money he has invested in the premises. This paragraph closes as follows:   ''Wherefore plaintiffs ask that said deed be set aside, and they be allowed to redeem from said sale, and that an accounting be had and the amount ascertained, with interest that said Taylor, of his individual funds, paid for said certificate of purchase and deed, and the amount of said rents and profits, and if any balance is found due said Taylor on his certificate, that the court fix the time in which they shall redeem by paying the same; that said mortgage be foreclosed against said Hodges and wife and for all other

proper relief. We think the complaint was good for that purpose. *Butt* v. *Butt*, 91 Ind. 305; Thornton & Ballard's Pr. Code, section 768, note 1.

It was unnecessary to allege that any redemption money was tendered to appellant, for it was shown that he was more than paid by the rents and profits by him received. *Scheffermeyer* v. *Schaper, Guar.*, 97 Ind. 70; *Fitzgerald* v. *Kelso*, 71 Iowa, 731.

The 4th specification of error raises the question of the sufficiency of the third paragraph of the answer. It is a familiar rule of pleading that an answer must, to be sufficient, be good to all of the complaint which it purports to answer, or it will be demurrable, although it may be good to a part thereof. 1 Works' Prac., section 588; *Frazee* v. *Frazee*, 70 Ind. 411; *Smith* v. *Little*, 67 Ind. 549.

The six years' statute of limitations is probably good to the demand for rents and profits, but not to the remainder of the complaint. The rule also renders bad an answer to a whole complaint in more than one paragraph, when the answer is good as to one and but one of the paragraphs of the complaint. *Allen* v. *Randolph*, 48 Ind. 496; *Musselman* v. *Cravens*, 47 Ind. 1; *Towell* v. *Pence*, 47 Ind. 304; *Alvord* v. *Essner*, 45 Ind. 156.

If it were true that the action to enforce the trust set out in the first paragraph of complaint were answered by the six years' statute of limitations, the answer, since it purports to respond to the whole complaint in both paragraphs, would be demurrable, because it is clearly not a good answer to the action to redeem set out in the second paragraph of the complaint; for a suit to redeem may be brought at any time within fifteen years after the cause of action accrues. *Barr* v. *Vanalstine*, 120 Ind. 590.

Vol. 138—6

This being an action to enforce a constructive trust growing out of a fiduciary relation, the act complained of is poisonous in its consequences, and the suit can only be barred by the fifteen years' statute of limitations. Thornton & Ballard's Prac. Code, note to section 294; *Albert* v. *State, ex rel.*, 65 Ind. 413; *Potter* v. *Smith, supra; Wilson* v. *Brookshire, supra.*

The fifteen-years' statute would not begin to run until Taylor was discharged from his trust and began to claim title absolute in himself adversely to the trust. Works' Prac., vol. 1, section 258; *Albert* v. *State, ex rel., supra,* on p. 420; Story's Equity Jurisp., section 1520; *Cutsinger* v. *Ballard*, 115 Ind. 93; *Thomas, Admr.*, v. *Merry*, 113 Ind. 83.

In discussing the error specified for overruling the motion for a new trial, counsel urge that the evidence does not disclose that the guardian at any time had sufficient funds of his wards with which to pay himself for the certificate. In our opinion this is not material, as it would not preclude the beneficiaries from redeeming now, if the evidence otherwise sustained the second paragraph of the complaint, nor would the want of such funds defeat a constructive trust if the averments of the first paragraph of complaint are otherwise supported by the evidence. It appears that the certificate cost $499, the mortgage, as stated, was for $711 to appellant as guardian, and $200 to him individually. As to the latter amount, if the land had been sold at any time to pay the liens, it must have been held as junior to the other claim, for the obvious reason that Taylor could not, while guardian, secure a debt to himself by in any way impairing a security which he was taking for his wards; and if he secured his own funds with the same mortgage with which he protected his trust fund his lien would be postponed to it.

The complaint charges that the land was worth $4,000. The evidence amply shows it to have been worth $2,000 at the time the appellant was guardian. This indicates that, by taking the proper steps, Taylor could easily have realized enough to pay all the liens that were against the property.

It is contended by counsel that the evidence of the final settlement of Taylor is conclusive in his favor upon every point made by the complaint. We do not so understand the law. It can not be fairly asserted that when the guardian was allowed to turn the $711 note and mortgage over to his wards and take full credit therefor, the wards would, by the judgment of final settlement, be estopped from redeeming from the liens held by Taylor individually. Such settlement would imply that the notes turned over were of some value and carried with them the right to redeem from precedent liens, no difference by whom they were held, even if the wards did not possess the equitable title to the real estate. If, on the contrary, the equitable title was in the wards, the question whether Taylor should be required to transfer the legal title to them, at the time of the settlement, was in no way involved in the final report. Especially is this true when it made no mention of the legal title, and all that was required of the guardian in such report was to report as to the management of the land and account for the rents and profits.

It is a well settled rule that matters not involved in the final settlement report of the guardian are not adjudicated therein, and it is not necessary to set aside such report in order to attack the transaction. *Wainwright* v. *Smith,* 106 Ind. 239; *Naugle* v. *State, ex rel.,* 101 Ind. 284.

Appellant claims that as to Mathew H. Calvert there was an acquiescence in all that Taylor had done, with

full knowledge of all the facts after the *cestui que trust* had arrived at the age of twenty-one years. Upon this point the evidence of Taylor and Calvert are in direct conflict. But counsel do not seem to question the statement of Calvert that when he asked Taylor what he had in the land Taylor told him he could do nothing with the mortgage until James R. Hodges died; that the judgment was ahead of the mortgage. This was plainly an evasion of the ward's rights in the premises. Such conduct and all arrangements between guardian and ward so soon after the ward became of age will be closely scrutinized. 1 Story's Equity, section 317; Bigelow on Fraud, p. 252.

The complaint alleges that the judgment on which the certificate of purchase was issued was taken in Monroe county, while the evidence shows it was rendered in Greene county. This was an immaterial variance; the complaint might have been amended to cure it after the evidence was all in; and this court will presume that the amendment was made. *White* v. *Stellwagon*, 54 Ind. 186; *Chaney* v. *State, ex rel.*, 118 Ind. 494; *Ke-tuc-e-mun-guah* v. *McClure*, 122 Ind. 541; *Watt* v. *Pittman*, 125 Ind. 168.

The sixth reason for a new trial is based upon the exclusion of certain evidence of the defendant, Taylor, in his own behalf, as to the amount of rent he had received and the sums paid for improvements. That he was an incompetent witness against the heirs of John I. Calvert, seems to be conceded. *Malady* v. *McEnary*, 30 Ind. 273.

But it is claimed that the evidence was only offered against Mathew H. Calvert. It seems, from an examination of the record, that this limitation was only made as to the first question, and not to any of those which followed. The first question was objected to, as the rec-

ord shows, because it was not a proper way to prove the rental.    Taylor might have received much less for the rents of the place than they were worth.    So, with the second question, it called for the wrong criterion for determining the amount to be credited for improvements. The third question is open to the same criticism, and the further objection that it calls upon the witness for a calculation.

The true test in such a case as this is, on the one hand, what was the rent of the place really worth? and, on the other, what is the reasonable value of the improvements made?    Not simply what rent was actually received, and what the improvements cost.

A party in possession, liable to account for rents and to receive credits for improvements, will not be permitted to let the place lie idle or to mismanage it, and then account only for the value of the rents actually received, but will be called upon to account for the reasonable rental value of the premises; nor will he be permitted to burden the premises with unnecessary or useless improvements, and charge therefor; hence the legal test of liability on the one side, and of compensation on the other, is, what is the reasonable rental value of the premises? and what the reasonable value of the improvements, considered as such, thereto?    Furthermore, it is a rule of practice that offers to prove will not be available unless the facts expected to be elicited by the questions asked are stated to the court below at the time of making the offer to prove.    Elliott's App. Proced., section 743.

The offer must be specific, a general offer will not be sufficient.    *Over* v. *Schifling*, 102 Ind. 191; *Carskadden* v. *Poorman*, 36 Am. Dec. 145.

Appellant offered to prove, by Taylor, the amount of rent he had received from the place; also the amount he

had paid for improvements, and what was the annual value of the rents and profits after deducting the cost of the improvements.

It will be observed that none of these offers states specifically the amount of the rent, or the cost or value of the improvements proposed to be proved. These offers were, therefore, too general. They should, in each instance, have the specific amount which they expected the witness to fix in his testimony to be elicited by the question.

It is earnestly insisted by appellant's counsel that the court erred in refusing to grant him a new trial as of right, while appellees contend that the issues embraced causes of action on which a new trial as of right could not be demanded that each of the causes stated in the issues, except that embraced in the cross-complaint to quiet title, is one in which a new trial of right can not be required. As has already been said, the first paragraph seeks to have a trust declared and the legal title vested in the holders of the equitable title; the second paragraph asks that a lien be declared satisfied, and that plaintiffs be allowed to redeem from any balance that might be found remaining unpaid upon it. There were no allegations in either paragraph concerning the quieting of title. We think it clear that the second paragraph states no cause of action on which a new trial as of right is demandable. *Voss* v. *Eller*, 109 Ind. 260; *Shular* v. *Shular*, 56 Ind. 30.

The finding and judgment was to the effect not only that Taylor held the land in trust, but that both of his liens for the amount of the certificate and the $200 note were paid. The final judgment effectually adjudicated all questions affecting the rights of Hodges in the land, but contains no reference to the cross-complaint of Tay-

lor to quiet title. The cause proceeded to judgment on the entire complaint as against the appellant, and as one of the paragraphs contained a cause of action on which a new trial as of right was not demandable, the motion was correctly overruled. *Wilson* v. *Brookshire, supra,* at page 506.

We find no error in the record for which the judgment should be reversed.

Judgment affirmed.

Filed May 17, 1894.