Farr, J.
This' cause came on to be heard on the exceptions filed to the guardian’s eighth account and to exceptions filed at a later date to the fifth, sixth and seventh accounts.
These exceptions were all presented at the same time and will be disposed of in like manner. The exceptions to the eighth account will be first considered.
Exception number one involves some fifteen items of various amounts for hardware, grass seed, wire for fence, labor in building fence, boarding, lumber, shade trees and plants.
The evidence of the guardian discloses, and it is the only evidence offered as to these charges, that the hardware was used in *312 and about the permanent improvements on the premises, some of which were necessary to be made, owing to the destruction of the old dwelling house by fire. No testimony is offered to the contrary and it is believed that credit should be allowed for the item and it will be so ordered.
There are several items for timothy and clover seed. The evidence of witness, McIntosh, was to the effect that in the locality of this farm it was the custom for the landowner to furnish grass seed and the tenant to sow the same without charge.
The witness, Moore, also substantially so testified and this was corroborated by S. George Connell. It is believed that this rule practically prevails throughout rural communities in this state where there is no agreement which otherwise provides. Any other rule would work hardship for tenants from year to year, if compelled to sow but not be permitted to gather the crop.
This was but a tenancy from year to year, although continuing for several consecutive years, yet it was liable to be terminated at any time should the death of John M. Connell occur. It is not disputed that the purchases of grass seed were made and.credit will therefore be allowed for the amounts claimed.
There are also charges for fence wire, fence building and lumber. The evidence discloses and it was undisputed, that these expenditures were for the improvement of the ward’s premises.
In Giauque, Manual for Guardians, Section 72, it is observed as follows:
“It is the guardian’s duty to make the proper repairs on ward’s real estate,- and pay for them out of the income.”
It will be observed that the author uses the language, “proper repairs,” thereby suggesting good faith on the part of the guardian in that regard. Moreover, they are to be paid for out of the income, which no doubt indicates repairs of ordinary character such as fence building and small repairs to buildings, otherwise they would be designated as improvements.
In Werner, Am. Law Guardianship, page 22, it is also observed as follow:
“It is the guardian’s duty to keep his ward’s real estate in good repair and tenantable condition, if the means in his hands are sufficient for such purpose.”
*313 It is the guardian’s duty to keep his ward’s premises in good repair and thereby preserve the estate.
Rockel, Ohio Prob. Prac. likewise lays down the rule at Section 1394 as follows:
“It is the duty of the guardian to keep the ward’s real estate in good repair and tenantable condition, if the means in his hands are sufficient, and if in consequence of his neglect -in this respect,.the premises are not rented, he is liable for the loss.”
This seems to broaden the principle and make the guardian liable if he' neglect such repairs, and the premises' for that reason are not rented.
At Section 1432 the author further states: “ It is the duty of the guardian to keep the ward’s real estate in such condition that it will yield a reasonable income. ” * * * How else than by repairs could such condition be maintained?
In 23 Cyc., 87, the text-writer lays down the correct principle, and it is in point with the case at bar.
“If he occupies the premises himself, he is -charged with rent, less the reasonable value of the necessary improvements made by him.” See also Werner, 346; Taylor v. Calvert, 138 Ind., 67.
And why not? If the guardian make the improvements and pay the rent as any other tenant, he is entitled to enjoy the premises as any other tenant, in fair, tenantable condition.
Counsel for exceptor urges, however, that there is no implied warranty on the part of the landlord, where there is no fraud or concealment, that the premises are fit or unsuitable for the purpose for which they are leased, nor is there any implied covenant on his part to put -or keep them in repair, and in support of this view cites Shindelbeck v. Moon, 32 Ohio St., 264; Shinkle v. Birney, 68 Ohio St., 328; Campbell v. Luck, 2 C.C.(N.S.), 129; Linke v. Walcutt, 5 C. C.(N.S.), 54, affirmed, Linke v. Walcutt, 69 Ohio St., 531; Burns v. Luckett, 3 Bull., 517; McNeal v. Emery, 8 Bull., 265, all of which cases correctly interpret the law and support his position; however, that is not the real question at issue here. The foregoing is only to the effect that there is no implied warranty that the premises are fit and suitable for the purpose for which they are leased or implied covenant to put or *314 keep them in repair; that is, that there is no legal obligation to do so or liability as against the landlord if not done but it is nowhere held that he may not do so. Indeed, it would, seem, that to a reasonable degree at least he should do so.
' The ease at bar involves only the right of the guardian to make repairs, and in the light of all the foregoing it is believed that he had such right and the amounts claimed for reasonable repairs will therefore be allowed.
The item of eight dollars for boarding hands is not made clear by the evidence and it does not appear whether they were employed at work which would inure to the benefit of the ward’s estate or at labor about the farm. It is left so much in doubt that it is believed the claim should not be allowed. If the item was to be-charged against the ward’s estate the guardian should have been able to recall the names of persons boarded and to state the character of the services rendered. His answer was that he did not just recollect. And the exceptions are therefore sustained as to that item.
There are two items, one for shade trees and one for plants. It is not believed that shade trees upon farm lands are of that character of improvement for' which a guardian should expend fifteen dollars of the ward’s money, especially where the estate is heavily incumbered, as in the ease at bar._ A half day’s time and labor and a little good judgment on the part of the guardian, exercised in selecting a few fine young maples from a convenient grove, would doubtless have served the same purpose and been more commendatory of the guardian’s management of the ward’s estate. The character of the plants is not disclosed by the evidence unless when the guardian referred to strawberry plants, he had reference to the item in question. In any event, it would be difficult to conceive how plants .of any kind would be for the benefit of the ward’s estate or, how, under the circumstances, they could be properly charged against it. The exception is therefore sustained to both items.
Exception is also taken to the several items included in the charge of forty-three dollars, for repairs made and labor performed by the guardian on the ward’s farm consisting of build *315 ing fence seven dollars, roofing outhouse six dollars, labor and team two dollars and seventy-five cents, team two dollars, trimming orchard three dollars, planting shade trees one dollar, team work on fence row six dollars, cutting briars three dollars, repairs, door and porch one dollar and fifty cents, hauling rails two dollars, building fence seventy-five cents, piling lumber one dollar and fifty cents, repairing fence one dollar and fifty cents, hauling rails one dollar and fifty cents, repairing stable two dollars and twenty-five cents, repairing windows seventy-five cents.
The evidence with reference to these items was somewhat meager and indefinite because the guardian did not clearly, explain or was not asked concerning each item.
The charge of six dollars, for roofing outhouse, and seven dollars for building fence, should be allowed because it was for the more permanent improvement of the .ward’s estate; but the other items for repairing fences, hauling -rails, planting shade trees, cutting briars, making small repairs about porch, windows and stable, were doubtless such small changes or repairs as farmers usually make for their own convenience and special accommodation. Such charges should not be made against the estate and the exception is therefore sustained, except as to the items above mentioned.
Exception is also taken to the amount of two hundred and fifty dollars per year with which the guardian charges himself, as rental for his ward’s farm for the two preceding years. The evidence of the witnesses, Mclntosch and Moore, is to the effect that a fair rental would be two hundred and seventy-five dollars each, for the two preceding years. The farm contains 122 acres, is rather favorably situated with reference to markets, has a very good dwelling house and other buildings. The sum of two hundred and seventy-five dollars per year rental for the two preceding years would not be excessive or unreasonable. The exception is sustained.
The guardian will therefore amend his eighth account, increasing the charges against him by fifty dollars, and reducing the amount for which he asks credit by fifty-eight dollars,
*316 The exceptor subsequently filed exceptions to the fifth, sixth and seventh .accounts of the guardian; and said exceptions will be disposed of at this time. The seventh and next preceding account was filed-, 19 — , advertised according to law, and approved September 16, 1910. It is contended that such settlement was final and can not be reviewed in the manner in which the same is now sought to be done. As to the effect of a guardian’s settlement with the court, General Code, 10954, provides as follows:
“The settlement in the probate court of the accounts of a guardian is final between him and his ward unless an appeal be taken therefrom to the common pleas court in the manner provided by law. But a subsequent guardian during the minority of his ward, or a ward, within two years after he arrives at full age, may open and review such settlement for fraud or manifest mistake by civil action in the common pleas court of the county in which it was made, or the county where the former guardian resides when the petition is filed, as the plaintiff elects.”
Counsel for exceptor cites Revised Statutes, 6304 (General Code, 10991) which reads as follows:
“All laws relating to guardians for minors and their wards, and all laws pointing out the duties, rights, and liabilities of such guardians and their sureties, in force for the time being, shall be applicable to guardians for idiots, imbeciles and lunatics, and their children, except as otherwise specially provided; but in the settlement of the accounts of such guardians, no voucher shall be received from or allowed as a credit to the guardian of any idiot, imbecile, or lunatic, which shall be signed or purport to be signed by such idiot, imbecile, or lunatic; and provided, that * * * any such receipt shall have been allowed as a credit to such guardian, shall be held and deemed absolutely null and void, and any settlement made by any such guardian shall, at any time within two years after the appointment of another guardian, or after the disability of such ward may be removed, or such ward may die, be opened up and reviewed, on the motion of such newly appointed guardian, or legal representative, or of any other interested person, notice of which motion shall be given by publication. or otherwise as the probate judge may direct.”
*317 The foregoing section was in part written into the General Code and numbered Sections 10991 and 10992, but all the latter part of said former Revised Statutes, 6304, after the word “lunatics” near the middle of the section and beginning with “and provided” was not rewritten into said General Code sections and is designated by the code commission “part obsolete.” The part omitted was the part relied upon by 'Counsel for exceptor as to the right to reopen accounts already approved. It does not apply here, but the determination of this ease depended upon the construction of General Code, 10954, formerly Revised Statutes, 6289.
Rockel, Ohio Prob. Prac., Section 1494, construes Revised Statutes, 6289 (General Code, 10954) as follows:
The effect of the above section is to make such account, whether intermediate or final, a final account between the guardian and his ward as to every fact contained in the account unless an appeal be taken as provided by law. There is only one reservation to this rule, that is that the ward, within two years after arriving at the age of majority, shall have the right of opening the account for fraud or manifest mistake, by civil action in the court of common pleas. As to all matters contained in the account, the settlement becomes an adjudication.”
In the case of Woodmansie v. Woodmansie, 32 Ohio St., 18, the second section of the syllabus construing said section reads as follows:
“Under the provisions of said Section 31, every settlement so made by a guardian is final between the guardian and ward, unless an appeal is taken therefrom, or the' settlement is opened, in accordance with the provisions of this section.”
In the case of Eichelberger v. Cross, 42 Ohio St., 549, 554, Judge Obey observes as follows:
“True, a partial account is conclusive unless attacked in the mode provided by statute.”
Again, in the case of Braiden v. Mercer, 44 Ohio St., 339, 341, Judge Owen likewise construes said section:
“That the settlement was fiflal as between the wards and their guardian’s administrator in the absence of an appeal from *318 it or a proceeding to open it in accordance with the statutes, will be conceded.” See also Lynch v. Cogswell, 18 C. C., 641, a case well in point.
In the case of Errett v. Howert, 78 Ohio St., 109, 111, the the syllabus reads as follows:
"Every settlement made in the probate court by a guardian is final between the guardian and ward, unless an appeal be taken therefrom to the court of common pleas or the same shall be opened and reviewed for fraud or mistake by civil action * * * commenced'.within two years after the ward shall arrive at full age. Section 6289, Revised Statutes, fixes the limitation for such action and not Section 4982.”
It will be noticed that the foregoing makes every settlement final between the guardian and ward unless the statutory course be followed, and why not? There should be a concluding point in such matter as well as in any other.
General Code, 10991, provides as follows:
"Laws relating to guardians for minors and their wards, and pointing out the duties, rights and liabilities of such guardians and their sureties, shall be applicable to guardians for idiots, imbeciles and lunatics, and their children, except as otherwise specially provided.”
The duties, rights and liabilities are the same unless otherwise specifically provided and there is no different provision in the case at bar. It follows, therefore, that the right to reopen said accounts must be denied and the exceptions to the same dismissed.