Jackson *et al. v.* Landers *et al.*

◆

No. 16,278.

JACKSON ET AL. *v.* LANDERS ET AL.

TRUST AND TRUSTEE.—*Constructive or Implied Trusts.—Essential Elements.—Pleading.—Necessary Allegations.—Equity.*—Where a complaint, by intervenors in a cause of action, sought to raise an implied trust in their favor, but failed to show by the complaint that fraud, either actual or constructive, had intervened, the complaint was insufficient, as fraud is an essential element in the creation of such a trust, which is raised in courts of chancery, where it becomes necessary to prevent a failure of justice, and in most cases where there was no intention of the parties to create such relation.

SAME.—*Statute of Limitations.—Notice of Repudiation.—When Necessary and when not.*—The rule that the trustee must repudiate the trust, and that the *cestui que trust* must have notice of the repudiation before the statute of limitations begins to run, is applicable to direct and continuing trusts only, and generally has no application to trusts which exist only by implication of law, as it often occurs that the act which creates the trust puts in operation the statute of limitation, and to such cases the rule does not apply.

PLEADING.—*Complaint.—Sufficiency.—Theory of.*—A complaint to be good must be sufficient on the theory upon which it proceeds.

From the Morgan Circuit Court.

*D. Wilson, J. H. Jordan, O. Matthews* and *A. M. Cunning,* for appellants.

*W. S. Shirley* and *W. R. Harrison,* for appellees.

COFFEY, J.—At the September term, 1889, of the Morgan Circuit Court, the heirs at law of Louisa Passmore commenced an action therein for the partition of the lands of which she died seized, consisting of two hundred and ten acres. Such proceedings were had in this action as that the lands were sold by a commissioner and the proceeds of the sale paid to the clerk of the Morgan Circuit Court, but before any final order for distribution was entered, the appellees appeared and filed an intervening petition claiming a portion of the funds arising from the sale of the land. So much of this petition as is necessary to present the questions involved in the case alleges, substantially, that Charles Hicklin died testate in the State of Kentucky, in the year 1830, the owner of three thousand dollars, consisting of money, notes and other personal property; that by the terms of his will, which was duly probated, he gave all of his property to his widow, Jane Hicklin, during the term of her natural life, except the sum of three hundred dollars, one hundred of which was to be invested in land in the State of Indiana for the use of his son Allen Hicklin, one hundred invested in like manner for his son Thomas Hicklin, and one hundred in the same kind of land for the use of his son Charles M. Hicklin; that by the terms of the will all the property, except the sum above named invested for the use of his sons, was vested in the intervenors, who are his daughters, to be enjoyed by them upon the death of the widow, who was their mother; that Allen Hicklin, with full knowledge of the will and its contents, took charge, control and possession of the estate of Charles Hicklin deceased, and with the proceeds thereof paid Thomas Hicklin one hundred dollars, which he accepted in full of the bequest to him; that he purchased for himself the west half of the southeast quarter of section three, in township thirteen, range two

east, in Morgan county, Indiana, in discharge of the one hundred dollars bequeathed to him; that with other money belonging to said estate he purchased and paid for the east half of the southeast quarter of section three, in township thirteen, range two east, and fifty acres off the east side of the southwest quarter of section three, in township thirteen, range two east; that the said east half of the southeast quarter was purchased to comply with the bequest in favor of Charles M. Hicklin; that Charles died before he arrived at the age of twenty-one years, and that by reason of his death before arriving at the age of twenty-one, he was, under the provisions of the will, entitled to no part of said estate; that the purchase of said last named land was without the knowledge or consent of the intervenors; that under the terms of the will the land so purchased for the use of the said Charles M. Hicklin, at his death, became the property of the intervenors, as well as the said fifty acre tract, subject to the right of the widow to use the same during her natural life; that the widow, Jane Hicklin, died in the year 1848, leaving said lands to the intervenors, having used and converted to her own use all the other property belonging to said estate; that Allen Hicklin died in March, 1871, holding said lands in trust for the intervenors, leaving no children, but leaving his widow, Louisa Hicklin, who, after his death, intermarried with Willard Passmore, from whom she was afterwards divorced; that said Louisa Passmore died on the 15th day of August, 1889, still holding said lands in trust for the intervenors.

To this petition the appellants answer:

*First.* A general denial.

*Second.* Twenty years' statute of limitation.

*Third.* The fifteen years' statute of limitation.

*Fourth.* Twenty years' adverse possession of the land described in the petition.

*Fifth.* Repayment of the money mentioned in the complaint.

To this answer the appellees replied:

*Second.* That during all the time after Allen Hicklin received the moneys of the estate of the father of the appellees, and before the death of their mother, the appellees were nonresidents of the State; that the appellees, Matilda Landers, America McNabb, Mary Ann Perkypie, Malinda Scott, Maranda Hasty and Nancy Evans, were married women, and under the disability of coverture; that the said Allen Hicklin at no time put of record any deed or other conveyance for the lands bought in trust for the intervenors with the moneys belonging to them; nor did said Louisa, his widow, ever put any such deeds of record; that the intervenors never had any notice of any disclaimer of said trust by the said Allen Hicklin until after his death and until after the death of his widow, the said Louisa.

The assignment of error calls in question the ruling of the circuit court in overruling a demurrer to the petition and in also overruling a demurrer to the reply above set out.

The intervening petition in this case is very uncertain and indefinite in its allegations. It seems to proceed upon the theory that Allen Hicklin held the fifty acre tract of land therein described in trust for the appellees, because the purchase price was paid with money belonging to them, while it is claimed that he held the eighty acre tract in trust for them because the same was purchased for Charles M. Hicklin, who died before he arrived at the age of twenty-one, it being alleged that he was not entitled to any part of the estate except upon the condition that he reached that age. We are wholly with-

out information, so far as it can be ascertained from the petition, of the name of the person or persons from whom the fifty acres was purchased, the amount paid for it, or whether it was conveyed to Allen Hicklin or some other person, or, indeed, whether it was conveyed at all.

The petition falls far short of alleging sufficient facts to show that Allen Hicklin held this tract in trust for the appellees.

It appears by the will, which is made part of the petition, that Jane Hicklin, the widow, was the executrix, and that she was given all of the property, except the amount bequeathed to the three sons, during the period of her natural life.

The arrangement between Allen Hicklin and the executrix, by the terms of which he came into the possession of the money, is not stated. Of course she had the right to loan it, otherwise the bequest giving it to her for life would be of no benefit. If Allen Hicklin received the money belonging to the estate under any arrangement by the terms of which he was to repay it, no trust in land bought with the money could arise.

As the presumption is always against wrong-doing, we can not, in the absence of an allegation or facts to that effect, presume that he took possession of the money belonging to the estate wrongfully and without any agreement upon the subject between him and the executrix. The trust sought to be established is an implied trust.

The element necessary to create a constructive or implied trust is that fraud, either actual or constructive, must have intervened. Such trusts are raised by courts of chancery only, in cases where it becomes necessary to prevent a failure of justice, and in most cases where there is no intention of the parties to create such a relation. *Elliott* v. *Armstrong*, 2 Blackf. 198; 1 Perry on Trusts, section 166; 2 Pomeroy Eq. Jur., section 1044; *Cox* v.

*Arnsmann,* 76 Ind. 210; *Tinkler* v. *Swaynie,* 71 Ind. 562; *Wright, Guar.,* v. *Moody,* 116 Ind. 175.

In this case we are asked to raise an implied trust in favor of the appellees as against the estate of Allen Hicklin, without any allegation of fraud, either actual or constructive, or without any statement of facts from which such fraud can be inferred, for, as we have seen, all the facts alleged are consistent with perfect honesty on his part.   This is not a case where one person has in his care the funds of another charged with the performance of some specific duty.   The executrix had a perfect right to loan or use the funds during her life, and she had the power to confer such right on another, subject, however, to the duty of accounting to the appellees for the principal sum upon the death of their mother.

The money set apart to purchase the eighty acres of land for Charles M. Hicklin was not, under the terms of the will, the property of the appellees.   The land, when purchased, was not coupled with any condition.   It is true the will gave to the widow the right to occupy it during her life or widowhood, but the title vested in Charles absolutely.   Upon his death it vested in his mother and brothers and sisters, under the terms of the statute in force in this State at the time of such death.

The uncertainty that surrounds the purchase of the fifty acre tract also surrounds the purchase of this eighty. We are not informed, by direct allegation, as to whether Allen Hicklin took the title to this land in his own name, in the name of Charles M. Hicklin, or in the name of the widow who was to occupy it during her life.

In our opinion, this petition was not sufficient to entitle the appellees to the relief sought.   A complaint, to be good, must be sufficient on the theory upon which it proceeds.

The reply was, in our opinion, clearly bad.   We are

Jackson *et al. v.* Landers *et al.*

unable to perceive what proper place the allegations that the appellees were nonresidents of the State can have in this reply, inasmuch as the statute of limitations runs against a nonresident plaintiff the same as it does against a plaintiff who resides in the State.

Nor can we attach any force to the allegations that certain of the appellees were married women, since the disability of coverture was removed in this State in the year 1881. *City of Indianapolis* v. *Patterson,* 112 Ind. 344; *Wright* v. *Kleyla,* 104 Ind. 223.

The rule that the trustee must repudiate the trust, and that the *cestui que trust* must have notice of the repudiation before the statute of limitations begins to run, is applicable to the direct and continuing trust only of which courts of chancery alone have jurisdiction, and generally has no application to trusts which exist only by implication of law. *Churchman* v. *City of Indianapolis,* 110 Ind. 259; *Potter* v. *Smith,* 36 Ind. 231; *Newsom* v. *Board, etc.,* 103 Ind. 526; *Raymond, Admr.,* v. *Simonson, Admr.,* 4 Blackf. 77; *Smith* v. *Calloway,* 7 Blackf. 86; *Musselman* v. *Kent,* 33 Ind. 452.

It often occurs that the act which creates the trust puts in operation the statute of limitation, and to such cases the rule that the trustee must repudiate the trust does not apply.

This reply certainly was not sufficient as to the fifth paragraph of the answer, which averred that Allen Hicklin had repaid the money mentioned in the complaint.

Judgment reversed, with directions to the circuit court to sustain the demurrer to the intervening petition.

Filed May 23, 1893.