## COBURN ET AL. *v.* SANDS ET AL.

[No. 18,433.    Filed Dec. 16, 1897.    Rehearing denied March 29, 1898.]

APPEAL.—*When Erroneous Conclusion of Law is Harmless.*—Where one of three conclusions of law in a case is incorrect, the error is harmless if the other two conclusions·are correct, and fully justify the judgment of the trial court.  *pp. 145, 146.*·

RAILROADS.—*Condemnation of Land.—Lien for Damages Awarded. —Mortgage.*— A claim for the payment of land condemned by a railroad company is superior to any lien afterwards placed upon said land whether by  operation of a previous or subsequent mortgage. *p. 146.*

SAME.—*Condemnation of Real Estate.—Abandonment of Interest in Condemned Realty.*—In accordance with section 5160, Burns' R. S. 1894, a railroad company, in the year 1880, condemned and appropriated a strip of land adjoining its right of way.   The damages awarded were never paid, and no demand therefor was made till 1889. The company did not take formal possession of said land till 1887, and then, within a few days, suffered itself to be dispossessed by another railroad company.   To the latter company, the original owners of the land, for a valuable consideration, executed a warranty

deed. *Held,* that the acts, both of the original owners of the land, and the railroad company to which the land was first awarded, amounted to an abandonment of all claims under the condemnation proceedings. *pp. 147, 148.*

From the Marion Superior Court. *Affirmed.*

*John Coburn* and *Daniel Wait Howe,* for appellants.

*Augustus L. Mason,* for appellees.

HOWARD, C. J.—This was an action to declare and enforce a lien in favor of appellants upon funds in the hands of appellees, as trustees, proceeds of the sale of what is now known as the Indianapolis, Decatur & Western Railway.

From the special finding of facts by the court, it appears: That on August 6, 1880, the Indianapolis, Decatur and Springfield Railway Company filed in the office of the clerk of the court below, an instrument of appropriation of a certain strip of land owned by appellants, located in Louisiana street, in the city of Indianapolis, to be used for a permanent right of way for the construction and maintenance of the road of said company. On December 17, 1880, the appraisers appointed by the court made return of their award, assessing the value of the property so taken at nothing, and appraising the damages for injury to appellants' lands not taken at $1,500. This award was never reversed, and was never paid or tendered, and remains wholly unsatisfied. On the night of June 11, 1887, Henry B. Hammond, then receiver of said railway company, caused his employes to enter upon the premises so appropriated and construct thereon a piece of track, but he did not succeed in connecting such track with other tracks of the road, nor was any use made of the same for the passage of trains. Soon after, the Indianpolis Union Railway Company entered upon said property and forcibly took up and removed said track, and no further attempt was made

by said receiver or any one else in behalf of said first named railroad company to take possession of or use said property so appropriated, nor has said property ever at any time since been used by said Indianapolis, Decatur and Springfield Railway Company or by any officer or corporation succeeding to or representing said company.

It further appears from the finding, that on December 31, 1875, the Indianapolis, Decatur and Springfield Railway Company executed its mortgage to certain trustees named, pledging all the property then owned or thereafter to be acquired by the company, in security for bonds then issued. On April 28, 1876, the company executed a second mortgage on the same property. On March 16, 1885, in a suit to foreclose the second mortgage, the said Henry B. Hammond was appointed receiver of the company, and, in accordance with judgments duly entered in February, 1887, the property was sold, subject to the first mortgage; and thereupon the purchasers organized the Indianapolis, Decatur and Western Railway Company, which took possession of all the property, rights and franchises of the original company. On July 23, 1889, default having been made in the payment of interest due on the first mortgage bonds, the appellees, as trustees under said first mortgage, took possession of the property of said railway companies, entered upon the management of the same, and brought their action in the court below to foreclose said mortgage. In the action so brought, the appellants filed their intervening petition, answer, and cross-complaint, setting up the facts as to the appropriation of their said strip of land, and asking that the lien of their assessment therefor be held prior and superior to the lien of said mortgage, and that, in case of foreclosure, the court order their claim first paid out of the proceeds of sale.

In the decree of foreclosure, entered June 23, 1891, it was adjudged that the lien of said first mortgage was paramount and superior to the claim, right, or interest of all the defendants, to said action, except the claim of these appellants; as to which latter it was ordered that the intervening petitioners might thereafter establish their claim against the fund arising from the sale, or against the plaintiffs in that action, here the appellees; and it was further ordered, that said interveners were to be in no manner precluded from enforcing to their full extent the claims set forth by them in their petition, the consideration of which, by consent of parties, was reserved for some future date to be fixed by the court; and it was in said decree expressly provided that should said Coburn and others, the appellants, be found equitably entitled to any recovery, the same should be transferred to and become a charge upon the fund arising from the proceeds of the sale of said railroad property, or upon any funds in the trustees' hands, arising from the operation and management thereof, "the intent being that the said premises and property be sold free and clear from any claim of the said Henry Coburn and his said co-claimants." The proceeds of the sale made under said decree amounted to less than the amount due upon the said first mortgage bonds, the deficiency being about $200,000.

It is further found that upon the filing of appellants' intervening petition, and before the trial and finding, appellees, on behalf of the first mortgage bondholders, disclaimed any interest in the property described in the instrument of appropriation; and also, that neither they, as trustees, nor the Indianapolis, Decatur and Western Railway Company, to which, in May, 1894, they surrendered possession of the property of which they had been trustees, ever

Coburn *et al. v.* Sands *et al.*

took possession of, or used, or made any claim to the land so appropriated. It is also found, that at no time after the making of the award in said condemnation proceedings, in 1880, and until the filing of the intervening petition in this case, in 1889, did appellants, or either or any of them, ever apply to the court to order payment, or make any other effort to enforce payment, of said award. That, in the mean time, in the year 1886, the Indianapolis Union Railway Company instituted its condemnation proceedings for the appropriation of all of appellants' property along Louisiana street, including the strip of land hereinbefore described, and the award made to appellants in said procedings was confirmed on appeal to the court below; and it was by reason of such condemnation proceedings that said Union Railway Company claimed the right to oust Hammond, receiver, in 1887, and take possession of said strip of land, as hereinbefore set out. That in September, 1887, appellants, by warranty deed, conveyed to the said Indianapolis Union Railway Company their entire property along Louisiana street, including the strip of ground here in dispute; and no reservation or exception from said warranty was made in said deed as to any right of way over any of said ground. The consideration for said conveyance and warranty of the entire property, including the part here in dispute, was $32,000.00.

The first conclusion of law was, that the equities of the case were with the appellees, and against the appellants; and the third conclusion was, that the intervening petitioners were not entitled to be paid out of the proceeds of the sale of the railroad or out of the fund derived from the operation of the road. These conclusions were undoubtedly correct, and fully justified the judgment in favor of appellees.

The second conclusion of law, that the lien of the first mortgage was superior in equity to the claim of appellants, while unauthorized, as we think, was yet harmless, by reason of the first and third conclusions.

If appellants had any rightful claim at all, it was a claim for payment for land taken from them by the act of appropriation; and such claim would be superior to any lien afterward placed upon said land by the railroad company, whether by operation of previous or of subsequent mortgage. *Buffalo,etc.,R. R. Co.* v. *Harvey*, 107 Penn. 319; Lewis Em. Dom., section 621; Jones Corp. Bonds and Mort. (2nd ed.), section 118. A railroad company or other corporation cannot appropriate land without paying for it. As said in *Midland R. W. Co.* v. *Galey*, 141 Ind. 483, citing also *Chicago, etc., R. W. Co.* v. *Hall*, 135 Ind. 91, "A man's land cannot be taken from him without compensation. The new railroad company which succeeds to the rights and privileges of the old company cannot divest itself of the burdens. * * * The new company is enjoying the easement, under the conditions of the old company, and the benefits and burdens incident to its use are inseparable.'"

In *Chicago, etc., R. W. Co.* v. *Hall, supra,* this comprehensive statement was taken from *Lake Erie, etc., R. W. Co.* v. *Griffin,* 107 Ind. 464: "The appellant's liability does not rest upon the judgment against the old corporation, but upon the principle that, of having adopted and ratified the original appropriation, it is bound in equity and good conscience, to make compensation. For the right of the appellees to compensation for their property is protected by the Constitution, and it will not do to say that their unsatisfied judgment against the old insolvent corporation affords them any just compensation." See, further,

*Chicago, etc., R. W. Co.* v. *Galey,* 141 Ind. 360, and *New York, etc., R. R. Co.* v. *Hammond,* 132 Ind. 475.

If therefore appellants had any lien at all under their claim, such lien would be superior to that of any mortgage afterwards placed upon the same property. It would be, in effect, a lien for purchase money, evidenced by a public record in the court in which the appropriation proceedings were had, and could not be defeated by a subsequently attaching mortgage.

Under the statute, section 5160, Burns' R. S. 1894 (3907, R. S. 1881), as soon as the appropriation had been made by the act of the railroad company and possession taken, the rights of both parties would at once vest. The company would become the owner and entitled to the possession of its easement in the land, and the other party to the award, subject to a right of appeal by either party, to change the amount of the award. The landowner could no longer lay claim to the land as against the company, and the company could only contest the amount of the award. Their rights were reciprocal.

The parties could, however, mutually waive their rights; and either might estop itself from claiming under the act of appropriation. It is found by the court that appellants never made any demand for the money awarded them, from the time of the award, in 1880, until the filing of the intervening petition, in 1889. The railroad authorities, also, made no effort to take possession of the property from the time of the award, in 1880, until the night of June 11, 1887; and, a few days after this, they suffered the Indianapolis Union Railway Company to dispossess them, and never afterwards seem to have laid any claim to the land; and on the bringing of the intervening petition they filed their formal disclaimer of any interest in it. This would seem to have amounted, practically, to a

mutual abandonment of all claims by either party under the condemnation proceedings.

But, more than this, the appellants, in 1887, long before the filing of the intervening petition, made a warranty deed of the premises to the Indianapolis Union Railway Company, which company had, moreover, already acquired possession of the land, by condemnation and by the apparent acquiescence of the railroad authorities. The land which the appellants thus sold to the Union Railway Company is the same land for which they are now seeking compensation from appellees. They cannot both eat their cake and have it. We think, as the court concluded, that the equities of the case are with the appellees.

What we have said covers sufficiently, as we think, also the questions raised as to the overruling of the motion for a new trial. Judgment affirmed.