## CALDWELL, EXECUTOR *v*. ULSH.

[No. 23,096. Filed May 16, 1916.]

1. TRUSTS.—*Constructive Trusts.*—In the absence of statutory provisions to the contrary, or of circumstances showing a different intention or understanding, it is a rule of equity, where property is paid for with the money or assets of one person and the title is taken in the name of another, that a constructive trust arises in favor of the person whose money or assets are so used. p. 729.

2. TRUSTS.—*Constructive Trusts.*—Equity will raise a constructive trust for the purpose of working out justice when there was in fact no intention by the party charged as trustee to create such relation and usually when his intention was otherwise, since the gist of every constructive trust is fraud based upon misrepresentation and concealment, or arising from the use by one party of some influential or confidential relation, whereby he acquires the legal title to property under such circumstances that he ought not in good conscience hold and enjoy the beneficial interest therein. p. 730.

3. TRUSTS.—*Constructive Trusts.*—*Limitation of Actions.*—Where a constructive trust arises the statute of limitations will not begin to run against its enforcement until such time as the trustee disavows the trust by some act indicating that he was claiming the real estate as his own. p. 730.

4. TRUSTS.—*Enforcement.*—*Jurisdiction.*—The question of the establishment and enforcement of a trust is a personal rather than a local one and where a court acquires jurisdiction of the parties it has power to enforce the trust, although in so doing the title to property situated in another state or jurisdiction is incidentally affected thereby. p. 731.

5. TRUSTS.—*Constructive Trusts.*—*Enforcement.*— *Claims Against Decedents' Estates.*—*Pleading.*—Where the statement of a claim against a decedent's estate was complete, definite, and certain as to the condition and circumstances under which it arose, so as to constitute a sufficient bill for an accounting, claimant's failure to designate the action as one to have a trust declared and for an accounting was immaterial, though such was in fact the real character of the action, since in an action to enforce a claim against a decedent's estate, the claimant is not bound by any theory of the complaint. p. 732.

6. TRUSTS.—*Constructive Trusts.*—*Enforcement.*—*Limitation of Actions.*—*Evidence of Concealment.*—Where a decedent had in his lifetime taken the title to real estate in himself in satisfaction of a note belonging to his daughter-in-law, concealing such fact from her, and stating to the grantor as an excuse for nondelivery of the note that the mice had eaten it; the jury, in an action to declare and enforce a constructive trust in favor of the daughter-in-law, was warranted in inferring that the statement that the mice had eaten the note was sufficient to quiet the grantor and prevent inquiry leading to disclosure of the fraud. p. 732.

7. TRUSTS.—*Constructive Trusts.*—*Enforcement.*—*Accrual of Cause of Action.*—It will not be presumed that a cause of action to declare and enforce a constructive trust arose when the fraud was committed, in the absence of evidence showing when it was discovered, where the cause of action accrues on its discovery rather than at the time of its commission. p. 733.

8. APPEAL.—*Review.*—*Disposition of Cause.*—Where defendant's intestate had procured a conveyance of land to himself in satisfaction of a note held by plaintiff, who was his daughter-in-law, keeping the fact of the transaction from her, and informing her that the note had been destroyed, so as to prevent discovery of the fraud, it was the duty of the court on appeal to uphold the claim of the daughter-in-law against the estate, if possible to do so under any theory consistent with the principles of equity or rules of law, regardless of what theory the plaintiff may have adopted. · p. 733.

9. APPEAL.—*Review.*—*Inferences.*—Where there was evidence to warrant an inference drawn by the jury, the court on appeal could not draw a different one, even if the facts warranted it. p. 734.

From Kosciusko Circuit Court: *Francis E. Bowser*, Judge.

Action by Eliza M. Ulsh on a claim against the estate of Isaac Caldwell, deceased. From a judgment for plaintiff, William Caldwell, executor of the last will of decedent, appeals. (Transferred from the

Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*John D. Widaman, Allan S. Widaman* and *L. W. Royse,* for appellant.

*John H. Aiken* and *Andrew G. Wood,* for appellee.

Erwin, J.—This action arose upon a claim filed by appellee against the estate of Isaac Caldwell, deceased. Upon trial by jury appellee was awarded the sum of $888.11 with an order to pay the same out of the assets of the estate. There is no question presented here as to the validity of the claim, but it is contended by appellant that the statute of limitations bars appellee's right to a recovery and in that regard that the court erred in overruling the motion for a new trial based on the grounds that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. Some questions as to the right of appellant to be heard on the merits of the cause are attempted to be raised by appellee but as they are extremely technical no reference will be made to the same in this opinion. The question for decision is whether under the facts shown by the evidence introduced in this cause, appellee's claim is barred by the statute of limitations. The facts are substantially as follows: Isaac Caldwell, appellant's decedent was a resident of Kosciusko County, as was appellee; that Caldwell died testate in said county on July 28, 1910; that appellee was the widow of Joshua Caldwell, a son of appellant's decedent; that Joshua died a short time prior to March 13, 1886, leaving as his only heirs at law, appellee and a daughter, Ulla Caldwell, who has since intermarried with one Minear; that at the death of Joshua, one John Collins who then resided in Hayes County, Nebraska was indebted to said Joshua in the sum of more than $700; that in the settlement of

the estate of Joshua, this claim was divided between appellee, widow, and her daughter, Ulla; that Collins executed and delivered to appellee and her daughter, Ulla, separate notes in the sum of $358.40 due two years after date; that Isaac Caldwell was duly appointed the guardian of the daughter, Ulla, and as such guardian, collected the debt due his ward from Collins; that in June, 1893, John Collins, died, in the state of Nebraska and his widow was granted letters of administration and proceeded to settle the estate; that in September, 1893, Isaac Caldwell, made a trip to the state of Nebraska where he filed a claim for appellee against the estate of John Collins, based on the note executed by him to appellee on March 13, 1886, which claim was disallowed on the grounds that it was barred by the statute of limitations of the state of Nebraksa; that after the disallowance of the claim, Rosa Collins, widow of John Collins, having lands in her own right and expressing a desire to pay the debt evidenced by the note of her deceased husband, executed a deed of conveyance to Isaac Caldwell for one hundred sixty acres of land located in that state, in payment of the debt evidenced by the note of $358.40 of the date of March 13, 1886, that the deed of conveyance was taken by Isaac Caldwell in his own name, without the knowledge, consent or acquiescence of appellee; that Isaac Caldwell held the title to the real estate until his death in 1910, when by the terms of his will, it was given to a granddaughter; that at the time the deed of conveyance was made, Isaac Caldwell agreed with Rosa Collins that he would secure the note from appellee and send it to Mrs. Collins; that afterwards he falsely informed said Rosa Collins that he could not send her the note for the reason that the mice had eaten it. There is no evidence that Caldwell ever notified ap-

pellee that he had secured the title to the real estate in payment of appellee's claim against the Collins' estate or that he had settled the claim. The evidence further shows that some two or three months after the death of Caldwell, appellee and her daughter made a trip to Nebraska and visited Mrs. Collins; that immediately after her return from Nebraska, she filed the claim in question against the estate of Isaac Caldwell asking the payment of the amount of her note which Caldwell received in settlement of the claim against the Collins estate with interest from the date of the note.

It is contended by appellant that the cause of action accrued at the time the deed of conveyance to Caldwell was executed and that therefore the same was barred by the six-year statute of limitations. Appellee contends that appellant's decedent concealed the cause of action and therefore the cause of action did not accrue until the same was discovered.

It is a well-settled rule of equity, in the absence of statutory provision otherwise, that where property is paid for with the money or assets of one person, and the title thereto is taken in the name of another person, in the absence of circumstances showing a different intention or understanding, a constructive trust in the property arises in favor of the person whose money or assets are so used. 39 Cyc 118 and cases cited. When, therefore, Isaac Caldwell took the deed of conveyance for the one hundred sixty acres of land in Nebraska, the consideration therefor being the money due on the note of John Collins and which belonged to appellee, a constructive trust was created in favor of appellee, of which appellant's decedent involuntarily became the trustee. 39 Cyc 26 and cases cited. "For the purpose of work-

ing out justice, constructive trusts are raised by equity, when in fact there was no intention by the party charged as trustee to create such relation, and usually, indeed, when his intention was otherwise. The gist of every constructive trust is fraud, which may be founded upon misrepresentation and concealment, or arise from the use by one party of some influential or confidential relation which he sustained toward the owner of a legal title, thereby obtaining such title himself upon more advantageous terms than he could otherwise have done. And, therefore, one who obtains the legal title to property by arts or acts, or through circumvention or imposition, or by virtue of a confidential relation and influence arising from it, under such circumstances that he ought not, in good conscience, to hold and enjoy the beneficial interest therein, is converted into a trustee, and ordered so to execute the trust as to protect or indemnify the party defrauded, and at the same time promote fair dealing and common honesty in the interest of society and the state. 1 Perry, Trusts (5th ed.) §166; 1 Pomeroy, Eq. Jurisp. (3d. ed.) §155; 3 Pomeroy, Eq. Jurisp. (3d ed.) §1044; *Hughes* v. *Willson* (1891), 128 Ind. 491 [26 N. E. 50]; *Jackson* v. *Landers* (1893), 134 Ind. 529 [34 N. E. 323]; *Cox* v. *Arnsmann* (1881), 76 Ind. 210; *Wright* v. *Moody* (1888), 116 Ind. 175, 179 [18 N. E. 608].'' *Huffman* v. *Huffman* (1905), 35 Ind. App. 643, 645, 73 N. E. 1096, 1097. A trust once being established the statute of limitation would not begin to run until such time as the trustee disavows the trust by some act indicating that he was claiming the real estate as his own. *Scott* v. *Dilley* (1913), 53 Ind. App. 100, 101 N. E. 313; 39 Cyc 472; *Dyer* v. *Waters* (1890), 46 N. J. Eq. 484, 19 Atl. 129. The only act of disavowance on the part of Caldwell was,

when, by the terms of his will he undertook to de-
vise the real estate to his granddaughter, which will
was probated in 1910, from which date the statute of
limitations began to run. This was less than six
years before the filing of this claim.

It may be insisted that a proceeding to establish a
trust in real estate and asking an accounting in re-
lation thereto should have been begun in the
4. jurisdiction where the real estate is situated,
viz., in the state of Nebraska. The courts
have held that the question of the establishment
and enforcement of a trust is a personal rather than
a local one and if the court acquires jurisdiction of
the parties, it has power to enforce the trust, al-
though in so doing it incidentally affects the title
to property, the subject-matter of the trust, which is
situated in another state or jurisdiction. 39 Cyc
587; *Jones* v. *Jones* (1894), 8 Misc. 660, 30 N.
Y. Supp. 177; *Clark* v. *Clark* (1897), 180 Pa.
St. 186, 36 Atl. 747; *Reading* v. *Haggin* (1890),
58 Hun 450, 12 N. Y. Supp. 368; *Wilcox* v. *Morri-
son* (1882), 9 Lea (Tenn.) 699; *Massie* v. *Watts*
(1810), 6 Cranch (U. S.) *148, *157, 3 L. Ed. 181, and
cases cited.

In the last case cited, the court by Marshall, C.
J., uses the following language, "Where the defendant
in the original action is liable to the plaintiff,
either in consequence of contract, or as trustee, or
as holder of a legal title acquired by any species of
*mala fide* practiced on the plaintiff the principles of
equity give a court jurisdiction, wherever the per-
son may be found, and the circumstances that a
question of title may be involved in the enquiry
and may constitute the essential point on which the
case depends, does not seem sufficient to arrest that
jurisdiction."

The fact that appellee in her statement of her

claim, failed, in direct terms, to label her action as one to have a trust declared and for an accounting, is immaterial for the reason that, in all cases of claims against decedents' estates, it is necessary to set out only a definite and succinct statement of same. §2828 Burns 1914, Acts 1883 p. 153. *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636, 641, 66 N. E. 51, 67 N. E. 441. Nor is the claimant bound by any theory of her complaint as in other civil actions, either in the court below or this court. *Masters* v. *Jones* (1902), 158 Ind. 647, 652, 653, 64 N. E. 213; *Thomas* v. *Merry* (1888), 113 Ind. 83, 15 N. E. 244; *Woods* v. *Matlock* (1898), 19 Ind. App. 364, 366, 48 N. E. 384. Appellee's statement of claim is complete, definite and certain as to the condition and circumstances under which it arose, stating succinctly the facts as shown by the evidence set out in substance, *supra*, and under the rules of procedure governing actions of this character was sufficient as a bill for an accounting. §2828 Burns 1914, *supra*. Appellee of course could not ask an accounting of the trusteeship and recover the money paid for the real estate on which the trust has been impressed and also insist that she have title to the real estate.

Even if it be as appellant contends that the statute of limitations would run as against this trust, without some act of concealment on the part of appellant's decedent, the testimony in the case shows that Caldwell, when asked why he had not delivered the note to Mrs. Collins said to her that the mice had eaten it. The jury had a right to infer and evidently did infer that this had the effect of quieting Mrs. Collins and inducing her to make no inquiry of appellee in regard to the note, which if she had done would have disclosed to appellee the transaction of the conveyance of the real

estate by Mrs. Collins to Isaac Caldwell. The rule as to concealment is that "the defendant must not, at any time, do anything to prevent the plaintiff from ascertaining, subsequently to the transaction out of which the right of action arises, the fact upon which the right depends, either affirmatively by hiding the truth, *enhancing the natural difficulty of discovering it or by any device avoiding inquiry* which would result in discovery. *Boyd* v. *Boyd* (1867), 27 Ind. 429, 430; *Dorsey Machine Co.* v. *McCaffrey* (1894), 139 Ind. 545, 557, 38 N. E. 208, 47 Am. St. 290; *Jackson* v. *Jackson* (1898), 149 Ind. 238, 243, 47 N. E. 963. The statement of Caldwell that the mice had eaten the note had the effect to prevent a disclosure of his fraud, or at least the jury had a right to so infer from the facts proven. It will not be presumed that the cause of action arose when the fraud was committed, in the absence of evidence showing when it was discovered, where the cause of action accrues on its discovery, rather than at the time of its commission. *Lincoln* v. *Judd* (1892), 49 N. J. Eq. 387, 389, 24 Atl. 318. Appellee contends that she should have been allowed to testify to the fact that she discovered the fact of the conveyance to Caldwell by Mrs. Collins only after the death of Caldwell, and that the trial court abused its discretion in not calling her to testify, a question we do not decide for the reason that appellee has not assigned cross-errors and hence no question is presented in that relation.

If under any theory consistent with the principles of equity or rules of law, appellee's claim can be upheld it is the duty of the court to do so, regardless of what theory may have been adopted in the trial court or in this court. We are of the opinion that substantial justice has been done in

this cause and that the judgment should be affirmed. Judgment affirmed.

Morris, C. J., dissents; Lairy, J., not participating.

### CONCURRING OPINION.

Cox, J.—I concur in the affirmance of the judgment of the trial court, on the grounds that there was evidence from which it might have been inferred that Caldwell concealed her cause of action from appellee and that she discovered such concealment at a time which prevented the operation of the statute of limitations. These inferences having been drawn by the jury in the trial court, this court is not permitted to draw a different one, even if the facts might warrant it.

NOTE.—Reported in 112 N. E. 518. See, also, under (1) 39 Cyc 118; (2) 39 Cyc 169; (3) 25 Cyc 1158, 1159; 39 Cyc 607; (4) 39 Cyc 587; (5) 39 Cyc 618; (6) 25 Cyc 1432; (7) 25 Cyc 1424; (9) 4 C. J. 850; 3 Cyc 348.