BALLARD *v*. DRAKE'S ESTATE ET AL.

[No. 15,679.  Filed January 20, 1937.]

*Isaac Carter* and *A. E. Lisher*, for appellant.

*Wilbur F. Pell*, for appellees.

DUDINE, J.—This is an appeal from a judgment for defendant, on a claim filed by appellant against the estate of Frank Drake, deceased.

The cause was submitted to the court for trial without a jury, and the court having been duly requested to do so, made a special finding of facts and stated conclusions of law. Appellant filed a motion for new trial, which was overruled. On appeal, appellant assigns as errors that the court erred in each of its conclusions of law, and in overruling appellant's motion for a new trial.

The facts as found by the court, and the conclusions of law are as follows:

"1. That some time before the year 1919 one Martha Morrison died leaving certain property situated in the States of Illinois, Ohio and Kentucky, which property she owned at the time of her death.

"2. That she left surviving her certain heirs of the whole blood and also heirs of the half blood.

"3. That after her death a controversy arose between the heirs of the whole blood and heirs of the half blood, wherein said heirs of the half blood claimed an interest in the estate left by said decedent.

"4. That Francis Morrison Hasse was the only heir at law of a half brother of said Martha Morri-

son, deceased, but that Frank Drake never represented her in any matter involved in this controversy.

"5. That Frank Drake and Lauren Drake were the children of a half sister of Martha Morrison, deceased.

"6. That Rosamond Drake and Morris Drake were the only surviving children of a brother of Frank Drake and Lauren Drake, said brother being a son of a half sister of Martha Morrison, deceased.

"7. That Charles A. Dole and Margaret Emma Dole were the sole surviving heirs of a half sister of Martha Morrison, deceased.

"8. That Samuel J. Ballard and Wayland C. Ballard were the surviving children of a half sister of Martha Morrison, deceased, and Elsie Filsinger and Albert Ballard were the sole surviving heirs of a brother or sister of Samuel Ballard and Wayland Ballard.

"9. That Frank Drake, the defendant's deceased, about the year 1919, undertook to organize the Drake heirs, the Dole heirs and the Ballard heirs for the purpose of securing their alleged interest as heirs of the half blood of Martha Morrison, deceased.

"10. That said Frank Drake had an oral contract with Albert F. Ballard, claimant herein, whereby said Frank Drake as the agent for said Albert F. Ballard, was to secure for said Albert F. Ballard, whatever interest he might be legally entitled to as an heir of a half blood from the estate of Martha Morrison, deceased; that said Frank Drake was to receive for his services the sum of 30% which might be realized from the property owned by Martha Morrison, deceased, from which 30% said Frank Drake was to pay all attorneys' fees.

"11. That said claimant was to allow said Frank Drake in addition his proportionate part of court costs and incidental litigation as might be incurred in the prosecution of claimant's claim.

"12. That said Frank Drake instituted certain litigation proceedings in the state of Kentucky which were unsuccessful and all of the heirs of the half blood of Martha Morrison, deceased, realized nothing from her said estate as the result of this litigation. . . .

"13. That certain litigation was instituted by Frank Drake in the State of Illinois, out of which litigation said Frank Drake realized for the Drake heirs, the Dole heirs and the Ballard heirs, a sum of $12,500.00, . . . That said sum was paid to said Frank Drake on April 7, 1920.

"14. That there was paid on October 17, 1921, to Frank Drake, as the agent for the Drake heirs, the Dole heirs, the Ballard heirs the sum of $16,788.75, for all the interest which said heirs had in the estate and property of Martha Morrison, deceased, in Ohio.

"15. That said Frank Drake paid for revenue stamps on certain documents involved in said matter the sum of $17.50 . . .

"16. That said Frank Drake paid to Charles A. Dole all sums of money for said Charles A. Dole and his sister Margaret Emma Dole.

"17. That Nettie M. Randolph was claiming to be an heir and entitled to some interest in the money secured for the Ballard heirs. That Frank Drake made, on the following dates, payments in the sum set opposite each date to the heirs under mentioned.

To Charles A. Dole (for Charles A. Dole and Margaret Emma Dole)

| | | |
|---|---:|---:|
| Feb. 21, 1920 | $2,205.00 | |
| October 17, 1921 | 3,848.00 | |
| Total | | $6,053.00 |

To Samuel J. Ballard

| | | |
|---|---:|---:|
| Feb. 21, 1920 | $551.25 | |
| Feb. 25, 1920 | 551.25 | |
| Oct. 17, 1921 | 961.50 | |
| Total | | $2,063.00 |

To Albert F. Ballard

| | | |
|---|---:|---:|
| Feb. 21, 1920 | $275.63 | |
| Oct. 17, 1921 | 480.75 | |
| Total | | $756.38 |

To Wayland C. Ballard

| | | |
|---|---:|---:|
| Feb. 21, 1920 | $ 551.25 | |
| Oct. 17, 1921 | 1,923.00 | |
| Total | | $2,474.25 |

To Elsie B. Filsinger
Feb. 21, 1920.............................. $393.75
Oct. 17, 1921.............................. 687.00

Total ....................................... $1,080.75
To Nettie N. Randolph
Feb. 21, 1920.............................. $551.25      $551.25

Grand total ........................... $12,978.63

"That all of the above receipts were deposited by Frank Drake in the Farmers National Bank of Shelbyville, Indiana, and all payments were made from his account by bank drafts.

"18. That the gross amount received less the sum of $17.50 for revenue stamps, by Frank Drake for the Ballard heirs and the Dole heirs, was the sum of $19,514.17. That according to the contract of agency Frank Drake for his services was entitled to receive the sum of 30% to wit: $5,854.25 from said sum of $19,514.17, leaving a total for distribution exclusive of court costs and incidental expenses of $13,659.92.

"19. That Frank Drake died testate in Shelby County, Indiana, on November 12, 1930. That by reason of said death the defendant has lost its evidence as to what the court costs and incidental expenses were.

"20. That the claimant has been guilty of negligence in not prosecuting this cause before the time of its institution in this court.

"21. That the decedent Frank Drake at the time of distribution as set out in Finding No. 17 represented to claimant that said sums paid to claimant were claimant's net distributive share in said estate."

### CONCLUSIONS OF LAW

"1. The law and equities of the case are with the defendant.

"2. The claimant has been guilty of laches.

"3. That the claimant Albert F. Ballard should take nothing by this action, and that the defendant should recover its costs herein."

In support of the alleged errors that the court erred in each of its conclusions of law appellant contends,

"Drake received the money as agent of the appellant. He failed to account for that money, and reported he had received only a certain sum due the plaintiff, which was less than the amount actually due the plaintiff. This constituted a constructive trust . . ."

We do not think that the facts found by the court necessarily constitute a constructive trust.

A constructive trust is one which arises by operation of law, and is based on fraud, actual or constructive.

Constructive fraud is fraud which arises by operation of law, "from acts or (a) course of conduct which, if sanctioned by law, would, either in the particular case, or in common experience, secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Leader Publishing Co. et al.* v. *Grant Trust and Savings Co., Trustee* (1914), 182 Ind. 651, 660, 108 N. E. 121.

If Drake's representations to appellant that the sums paid to him were his "net distributive share" (Finding 21) *were untrue* such fact would not warrant the conclusion that constructive fraud arose. *Furnas* v. *Friday* (1885), 102 Ind. 129, 1 N. E. 296; *Kirkpatrick* v. *Reeves et al.* (1889), 121 Ind. 280, 22 N. E. 139. In the absence of any finding to the contrary we may assume for the purpose of this opinion, insofar as appellant's said contention is concerned, that appellant, at the time of the distribution, knew the total amount received by Drake as agent of all of said heirs, that appellant knew the amount of court costs, of which he had agreed to pay his proportionate share (finding eleven), that appellant at that time checked the figures against Drake's representations and concluded that Drake's figures were correct, or so nearly correct that appellant abandoned his claim to any further distribution. In view of such facts it could not be held that a

constructive trust arose out of Drake's acts or conduct.

Certainly it should not be held that appellant was a victim of fraud because of such false representations, unless it is shown that appellant relied on said representations. The court did not find (specially) that appellant. relied on the representations; and in considering the sufficiency of the facts found by the court to sustain the conclusions of law we can not assume that appellant did rely on said representations.

Furthermore in view of the fact that by reason of the death of Drake appellees had lost their evidence as to the court costs and incidental expenses (finding nineteen), it may be assumed for the purpose of this opinion, insofar as appellant's said contention is concerned, that if appellant had instituted this action during the nine years which elapsed between the distribution of said funds and Drake's death, Drake could have shown in evidence that the court costs and incidental expenses properly deductible from the respective shares when applied proportionately to appellant's share, would have equaled the deficiency claimed by him. In view of such facts there would be no fraud, constructive or actual.

Therefore, for each of said reasons we hold that the facts found by the court do not necessarily show constructive fraud or constitute a constructive trust.

If we are correct in that holding it is not necessary that we consider any other questions with reference to the alleged errors as to the conclusions of law, because if there was no constructive trust, the facts found do sustain the third conclusion of law that appellant take nothing by his claim, which conclusion fully justifies the judgment that appellant take nothing. It does not appear that the judgment in the instant case rests upon the second conclusion of law

that "claimant has been guilty of laches," hence any statement referring to laches, if unauthorized, was harmless. *Farmers Nat'l Life Ins. Co.* v. *Hale* (1919), 69 Ind. App. 413, 122 N. E. 19; *Coburn et al.* v. *Sand et al.* (1897), 150 Ind. 141, 48 N. E. 786; *Weil* v. *Conn. Fire Ins. Co.* (1922), 79 Ind. App. 421, 138 N. E. 696.

In support of the assigned causes for new trial that the decision is not sustained by sufficient evidence and that the decision is contrary to law, appellant contends that if the decision is based on the statute of limitations, it is not sustained by the evidence, because the fifteen-year statute of limitations is applicable in the instant case, the right of action having accrued in 1921, and this claim having been filed in 1933. Said contention is not tenable.

Sec. 2-601 Burns 1933 (§60 Baldwin's 1934) fixes the periods of time within which certain specified classes of actions, including actions "for relief against frauds" may be instituted. Sec. 2-603 Burns 1933 (§62 Baldwin's 1934) provides that "all actions not limited by any other statute shall be brought within fifteen (15) years . . ."

In order to support appellant's contention that the fifteen-year statute of limitations applies, it must be held in effect that this action is not limited by any other statute.

Appellant cites *Potter and Others* v. *Smith and Others* (1871), 36 Ind. 231; *Taylor* v. *Calvert et al.* (1893), 138 Ind. 67, 37 N. E. 531; and *Donlon* v. *Maley* (1915), 60 Ind. App. 25, 110 N. E. 92, in support of said contention.

The Potter case, *supra*, was an action brought by heirs of an estate to set aside a public sale of real property made by the administrator, on the ground that he was the real purchaser of the property in the name of another party.

In the Taylor case, *supra* (alleged in the second paragraph of complaint), a note for $711.00 and mortgage on certain real estate was given to a guardian in settlement of an indebtedness due from the mortgagor to the wards. The real estate was thereafter levied upon and sold on sheriff's sale to satisfy a judgment which predated the mortgage. The guardian purchased the certificate of purchase before the year of redemption expired. When the guardian settled he turned over the note and mortgage to the wards, and claimed title to the real estate. Wards brought suit to set aside the sheriff's deed to the guardian.

In the Donlon case, *supra,* a guardian purchased real estate without an order of court authorizing him so to do. She took title in her own name and later sold some of the real estate. The wards brought suit "to have a trust declared and for an accounting."

Each of said causes was based on a theory of a constructive trust, and in each case the court of appeal held that the six-year statute of limitation did not apply, but the fifteen-year statute of limitation did apply. See also to the same effect *Eve* v. *Louis et al.* (1883), 91 Ind. 457; *Wilson et al.* v. *Brookshire* (1890), 126 Ind. 497, 25 N. E. 131.

Appellee cites several cases based on constructive trusts, in which it was held that the six-year statute of limitations does apply, to wit: *Newsom* v. *Board of Comm. et al.* (1885), 103 Ind. 526, 3 N. E. 163; *Jefferson School Twp., etc.* v. *School Town of Worthington* (1892), 5 Ind. App. 586, 32 N. E. 807; *Caldwell* v. *Ulsh* (1915), 184 Ind. 725, 112 N. E. 518.

The rule which determines whether the six-year statute of limitations or the fifteen-year statute is applicable to a given cause based on a theory of a constructive trust is stated as follows in *Wilson* v. *Brookshire, supra,* (p. 501) : "The statute which provides that actions for re-

lief against frauds shall be brought within six years, applies to actions, the immediate and primary object of which is to obtain relief from fraud, and not to actions which fall within some other class, even though questions of fraud may arise incidentally."

Said six-year statute of limitation does not apply to cases of constructive trusts "where the *cestui que* trust, or person standing in his place, has the right to have the sale set aside, not because the purchaser or trustee has been guilty of fraud, but because he should be removed from all temptation to commit a fraud." *Wilson* v. *Brookshire, supra* (p. 502). Each of the cases cited above in which the fifteen-year statute was held applicable was such a case. (To same effect see *Eve* v. *Louis, supra; Potter et al.* v. *Smith et al., supra; New Albany Nat'l Bank* v. *Brown* (1916), 63 Ind. App. 391, 114 N. E. 486.)

The "immediate and primary object" and we may add the *sole* object of the instant case was to *obtain relief from fraud already perpetrated.* This case does not come within the class of cases the purpose of which is to *remove from the trustee* (of a constructive trust) *the opportunity to commit a fraud.* Therefore we hold that the six-year statute of limitations applied in the instant case.

If we are correct in that holding, it is not necessary that we consider any other questions, because if the six-year statute of limitations applied in the instant case, the court did not err in its decision that appellant should take nothing by this action, the claim having been filed more than six years after the cause of action accrued.

No reversible error having been shown, the judgment is affirmed.