HOOSIER INSURANCE CO. v. JAMES P. OGLE ET UX.

[No. 471A72. Filed December 30, 1971.]

*Don M. Robertson, Bunger, Harrell & Robertson,* of Bloomington, for appellant.

*Richard L. Wilder,* of Bloomington, for appellee.

SULLIVAN, P. J.—The cause below was tried upon plaintiffs' (Ogles') amended complaint in two pleading paragraphs, the first of which may be generally construed as a complaint for breach of a fire insurance policy contract alleging defendant's failure to pay the $4000 face amount following plaintiffs' claim for loss sustained August 12, 1967. The second paragraph of complaint alleged oppressive and malicious conduct on the part of defendant with reference to the same transaction and occurrence and claimed punitive damages of $10,000. The defendant (Insurance Company) contended alternatively that (1) no contract of insurance existed between the parties, and (2) even if such contract existed, it was terminated or rescinded.

The court found for the defendant Insurance Company upon pleading paragraph 2—the claim for punitive damages —but further found "that the defendant should be estopped from asserting a forfeiture of the insurance coverage alleged in Paragraph I of the plaintiffs' amended complaint" and adjudged damages of $4000 on pleading paragraph 1.

Appellant Insurance Company first asserts that the court erred in overruling its motion for a "directed finding" made at the close of plaintiffs' evidence.

## ERROR, IF ANY, IN FAILING TO ENTER JUDGMENT PURSUANT TO TRIAL RULE 41 (B) WAIVED

The cause below was tried to the court without jury. It should be noted that the court did not immediately rule upon defendant's motion for "directed finding" but, rather, took the matter under advisement at that time. Following such action by the court, defendant elected to proceed with submission of evidence. The court's final judgment entry contained a ruling denying defendant's motion for a "directed finding." The error, if any, however, in failing to grant the motion has been waived by defendant's election to proceed with its own case in chief. In this connection, appellees erroneously assert the applicability of Trial Rule 50 insofar as it states:

"A motion for judgment on the evidence made at one stage of the proceedings is not a waiver of the right of the court or of any party to make such motion on the same or different issues or reasons at a later stage as permitted above, except that *error of the court in denying the motion shall be deemed corrected by evidence thereafter offered or admitted.*" (Emphasis supplied)

Trial Rule 50 is clearly inapplicable in cases tried to the court. Trial Rule 41 (B), however, is applicable to such nonjury cases when a motion similar to that here involved is made. *Clark* v. *Melody Bar Inc.* (1971), 149 Ind. App. 245, 271 N. E. 2d 481; *Flynn* v. *Reberger* (1971), 149 Ind. App. 65, 270 N. E. 2d 331. We, therefore, deem a waiver provision such as that contained in Trial Rule 50[1] to be necessarily contained by implication in Trial Rule 41 (B). The Federal Rule 41 (B) has been similarly construed. *A & N. Club* v. *Great American Ins. Co.* (1968 6th Cir.), 404 F. 2d 100.

Further, Trial Rule 41(B) does not materially modify the practice formerly followed in Indiana. *Ohio Cas. Ins. Co.* v. *Verzele* (1971), 148 Ind. App. 429, 267 N. E. 2d 193. The law

---

1. Federal Rule 50, the counterpart of Indiana Trial Rule 50, does not contain a waiver provision.

governing such motions prior to the adoption of Trial Rule 41 (B) was as stated in *Farm & Home Ins. Co.* v. *Templeton* (1967), 142 Ind. App. 110, 232 N. E. 2d 367:

"Also, we do not feel that the appellant was prejudiced by the court's overruling of his motion for a finding at the conclusion of all the evidence, as the court must make a finding whether such a motion is filed or not." 232 N. E. 2d 367, 371.

See also *Flynn* v. *Reberger, supra.* We therefore hold that the court did not err in overruling the motion for "directed finding".

Appellant Insurance Company next asserts that the evidence failed to show that a contract of insurance existed, but that even if it did, such contract was properly terminated or rescinded prior to the date of plaintiffs' fire loss.

### EVIDENCE ESTABLISHES GENERAL AGENCY RELATIONSHIP BETWEEN DEFENDANT INSURANCE COMPANY AND LOCAL AGENCY

Defendant Insurance Company argues that the evidence failed to show that the Brinegar Agency with which Ogles had all their dealings was a general as opposed to a special agent of the Hoosier Insurance Company. Thus, appellant maintains that it is not bound by the acts or representations of the Brinegar Agency or its employees. In light of the fact that no written policy of insurance was ever actually issued to Ogles, it is the Insurance Company's position that any parole contract made by the Brinegar Agency with Ogles could not be binding upon Hoosier Insurance Company since Brinegar lacked the necessary authority to so commit the company.

Ogles' evidence was to the effect that an employee of the Brinegar Agency on June 21, 1967, at the time Ogle submitted his application for insurance and paid a partial premium, told Ogle that the insurance was in force as of that moment. The evidence of record clearly establishes the Brine-

gar Agency as general agent of Hoosier Insurance Company with authority to bind the insurer at the time of application, and further, that such binding contract was entered into in this instance. Such was the testimony not only of plaintiff Ogle and of Brinegar himself but also of Mr. Hill, Claims Manager of defendant Insurance Company. There is no doubt, therefore, that on June 21, 1967, a binding contract of insurance was entered into between plaintiffs, Ogles, and defendant, Hoosier Insurance Company.

## DEFENDANT INSURANCE COMPANY DID NOT EFFECTIVELY RESCIND OR TERMINATE PLAINTIFFS' INSURANCE COVERAGE

Defendant Insurance Company upon appeal makes an alternative argument that even if an insurance contract was entered into, it was rescinded or terminated by reason of Ogles' failure to comply with the terms and conditions thereof in that Ogles (1) falsely or mistakenly misrepresented in the application that the dwelling house insured was upon the date of application occupied, when in fact it was vacant, and (2) failed to cooperate or respond to the Insurance Company's July 12, 1967, letter requesting instructions for driving directions to the premises in order that defendant or its representative might take photographs of the dwelling. In essence, defendant Insurance Company's argument is that such failure upon the part of Ogles resulted not in a withdrawal of coverage or termination of a policy after a loss had occurred but, rather, in termination of a preliminary binder of coverage while the application for a policy contract was still pending.

In support of this contention, the Insurance Company states that when the Ogles failed to respond to the July 12 request for driving instructions, the Brinegar Agency directed Hoosier Insurance Company for interoffice memorandum dated July 28, 1967, to not issue the policy. The date of the interoffice memorandum, it should be noted, was subsequent to the date which the Insurance Company claims was the date of termina-

tion of the preliminary binder, i.e., July 26, 1967. The latter date was mentioned in a letter purportedly mailed to Ogle on July 21, 1967. This letter was an exact copy of the letter dated July 12 requesting the driving directions but to which was appended the following notation:

"7-21-67 Please be advised that inasmuch as we have not heard from you, we must ask the company not to issue this policy, and coverage will cease as of July 26, 1967."

Said letter was purportedly forwarded to Mr. Ogle by "Certified Mail."

With reference to the alleged cause for termination of coverage occasioned by non-cooperation on the part of Ogles, the evidence most favorable to the judgment in favor of plaintiffs is contrary to defendant-appellant's interpretation of the facts. Such evidence is to the effect that in late June or on the 1st of July, after filing of the application, Ogles delivered an abstract of title to the Brinegar Agency and made a $10 additional payment upon the balance due for the premium. Ogle stated that he heard nothing further from the agency until two days after the structure burned, at which time the agency returned the $15 theretofore paid toward the premium. This refund check was dated August 12, the day of the loss, the same date upon which Ogle reported the fire to the Brinegar Agency. Ogle refused the "refund" check and returned it to the Brinegar Agency.

With reference to the inability of the defendant Insurance Company to obtain a photograph for the reason that plaintiffs failed to provide driving directions, Mr. Hill, defendant's Claims Manager, conceded that the application for insurance provided by defendant did not require photographs and that the desirability of such photographs as set forth in Hoosier Insurance Company's instructions to its agents does not amount to a condition precedent for issuance of a policy. There was no evidence whatever that anyone mentioned photographs to Ogle at the time of his application. Furthermore,

the original application contained certification by the Brinegar Agency dated July 7, 1967, that the agency had personally inspected the Ogle property and recommended the insured and the subject of the insurance.

The July 12 letter requesting driving instructions made no mention whatever as to any failure on the part of Ogles to pay in full the annual premium. While Ogle testified that the delay in delivery of his policy may have been occasioned by the fact that the full and complete annual premium had not been paid, the Insurance Company at no time so advised him.

The so-called "certified mail" notice to Ogle advising that coverage would terminate as of July 26 was not shown by the evidence to in fact have been sent by regulation certified mail. Rather, the evidence showed merely that the Brinegar Agency affixed a card in the form of the usual postal certified mail but that such cards were merely internal office memoranda for the information of the agency and the home office.

It was within the discretion of the court as the trier of fact in giving weight and credit to the conflicting evidence to determine that Ogles in fact did not receive notice of prospective cancellation or termination. Even had such notice been received, it was within the prerogative of the court to determine that the cause for termination stated in such notice, i.e., failure to cooperate in the defendant's desire to obtain photographs, was not good and sufficient cause for such termination or cancellation within the provisions of the preliminary oral binder nor within the reasonable contemplation of the parties.

## DEFENDANT-APPELLANT IS ESTOPPED TO ASSERT MISREPRESENTATION BY PLAINTIFFS AS CAUSE FOR DECLARING INSURANCE CONTRACT VOID OR VOIDABLE

Appellant Insurance Company cites *Automobile Underwriters, Inc.* v. *Stover* (1971), 148 Ind. App. 555, 268 N. E.

2d 114, for the proposition that coverage may be declared void or voidable because of a misrepresentation made at the time of application which might reasonably influence the insurer's decision to accept or reject the risk. While we agree that the misrepresentation concerning occupancy of the insured dwelling house might well have influenced or altered the determination of the insurer concerning premium rates, if not even whether or not to issue a policy, the defendant insurer is estopped to take such position for the reason that its duly authorized agent certified that a personal inspection of the premises had been made and, further, that the agency recommended that the policy issue. The factual situation here present meets all the requirements of the estoppel theory asserted by plaintiffs and as found by the court to exist.

The basis for the doctrine of equitable estoppel is actual or constructive fraud on the part of the person estopped. *Marcum* v. *Richmond Auto Parts Co.* (1971), 149 Ind. App. 120, 270 N. E. 2d 884. In the *Marcum* case, this court quoted from *Beecher* v. *City of Terre Haute* (1956), 235 Ind. 180, 184-185, 132 N. E. 2d 141, 143, as follows:

" 'Constructive fraud is fraud which arises by operation of law, "from acts of (a) course of conduct which, if sanctioned by law, would, either in the particular case, or in common experience, secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Leader Publishing Co. et al.* v. *Grant Trust and Savings Co., Trustee* (1914), 182 Ind. 651, 660, 108 N. E. 121, 124.' *Ballard* v. *Drake's Estate,* (1937), 103 Ind. App. 143, 148, 5 N. E. 2d 671, 674. 'Fraud, however, may exist without any intention to "do a wrong," as the law itself may, under certain conditions, declare a thing to be fraudulent without a real intention to commit fraud having been found. This is known as constructive fraud, or fraud in law, and may consist of any breach of duty, which, if not relieved against, would operate as a fraud.' " 270 N. E. 2d 884, 887.

By reason of the foregoing, we deem the judgment of the

trial court to be supported by sufficient evidence. Said judgment is therefore affirmed.

Buchanan and Lowdermilk, JJ., concur; Robertson, J., not participating.

NOTE.—Reported in 276 N. E. 2d 876.